PEOPLE v MUSSER

PEOPLE v HUMBEL

1. CRIMINAL LAW—DEFENSES—INSANITY—EVIDENCE—PRIOR ARRESTS
    —PRIOR CONVICTIONS—PRIOR ANTISOCIAL CONDUCT.

    Testimony of prior arrests, convictions, and antisocial conduct of
    a criminal defendant is not ordinarily admissible; however,
    such testimony is admissible for the purpose of determining the
    question of sanity, once defendant has raised such a defense.

2. CRIMINAL LAW—ASSISTANCE OF COUNSEL—DEFENSES—INSANITY—
    EVIDENCE.

    A defendant was not denied effective assistance of counsel by
    reason of her counsel's failure to object to the admission of
    testimony regarding her prior arrests, convictions, and antiso-
    cial conduct where the testimony was admissible for the limited
    purpose of determining the question of her sanity, and where
    the trial court so instructed the jury.

3. CRIMINAL LAW—FAIR TRIAL—PROSECUTION'S ARGUMENT—DEFENSES
    —INSANITY—EVIDENCE.

    A defendant was not denied a fair trial by reason of a prosecu-
    tor's inferences in his closing argument concerning how testi-
    mony of a defendant's prior arrests, convictions, and antisocial
    conduct related to the question of defendant's alleged insanity
    where the testimony was admissible for the limited purpose of
    determining the question of defendant's sanity, and where the
    trial court so instructed the jury.

4. CRIMINAL LAW—EVIDENCE—PHOTOGRAPHS—PROBATIVE VALUE—
    PREJUDICE.

    The question of the admission of photographs of a murder victim
    is one addressed to the sound discretion of the trial court; in
    exercising that discretion the trial court must weigh the proba-

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 585.
[2, 3] 53 Am Jur, Trial §§ 135, 136.
[4] 21 Am Jur 2d, Criminal Law §§ 368, 369.
[5, 6] 53 Am Jur, Trial § 677.

tive value of such photographic evidence against the potential prejudicial effect.

5. CRIMINAL LAW—INSTRUCTIONS TO JURY—SUPPLEMENTAL INSTRUCTIONS—DEFENSES—INSANITY—BURDEN OF PROOF.

A jury was not misled by the supplemental instructions of a trial court on the question of insanity where the instructions, as a whole, properly apprised the jury of the requisite burden of proof that was upon the people on the issue.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—SUPPLEMENTAL INSTRUCTIONS—ABSENCE OF DEFENDANT—HARMLESS ERROR.

It was harmless error beyond a reasonable doubt for a trial judge to give a supplemental charge to a jury when a defendant was not present where the supplemental charge was basically a repetition of the previously given charge and where there were no substantial errors in the instructions as a whole.

Appeal from Livingston, Paul R. Mahinske, J. Submitted Division 2 March 11, 1974, at Lansing. (Docket Nos. 15044, 15529.) Decided June 24, 1974. Leave to appeal denied, 392 Mich —.

Janet Lee Musser and Raymond L. Humbel were convicted of first-degree murder. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Thomas Kizer, Jr.,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Donald Ubell,* Director, and *Aloysius J. Lynch,* Special Assistant Attorney General, of counsel), for the people.

*Lawrence R. Greene,* for defendant Musser on appeal.

*Roger L. Wotila,* Assistant State Appellate Defender, for defendant Humbel on appeal.

Before: HOLBROOK, P. J., and ALLEN and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. Defendants were tried jointly before a jury, were found guilty of murder in the first degree, MCLA 750.316; MSA 28.548, and were sentenced to life imprisonment. Both defendants appeal as of right.

While the trial was extensive, taking some 15 days and resulting in almost 2300 pages of transcript, no useful purpose would be served by here detailing the evidence. The ultimate question confronting the jury was not so much the fact of the brutal killing of the 17-year-old female victim, nor even the fact of defendants' commission of that act, but rather it was the question of defendant's sanity. As defendant Humbel's attorney so succinctly stated in his opening statement:

"I suggest to you that the issue in this case and the issue upon which you will ultimately have to make your decision, is not what happened, what the acts of the actor was, except as they may relate to the mental condition. There is going to be very little disagreement between the defense and the prosecution on what happened. The question that I am going to ask you and the question that you are going to ultimately have to answer to reach a decision in this case, is why did those facts happen.

\* \* \*

"Our defense is that of insanity. I think insanity is probably a poor choice of words but the law uses the word insanity. The defense of the case will be that Mr. Humbel suffers from a mental disease or defect, and that he did not have control of his free will."

On appeal defendant Musser makes a broad-based attack upon the long-established Michigan

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

insanity standard as promulgated in *People v Durfee,* 62 Mich 487; 29 NW 109 (1886). It will suffice to say that defendant Musser's assertions have been answered adversely by the Michigan Supreme Court in its recent comprehensive reappraisal of the efficacy of the *Durfee* rule in *People v Martin,* 386 Mich 407; 192 NW2d 215 (1971). It is clear that the Supreme Court found the *Durfee* rule does provide a reasonable basis for determining those who should not be held criminally responsible for their acts; and since all those within that classification are treated equally, defendant's assertion of denial of equal protection must fail.

Defendant Musser also contends that she was denied a fair trial by reason of the disclosure by her expert witness that she had been involved in a prior criminal offense. This disclosure came in response to a question asked by defendant Musser's counsel. While the answer given was not truly responsive to the question asked, counsel did not move to have the testimony stricken. We would further note that the trial court specifically instructed the jury that the defense psychiatrist's testimony concerning the other crime could only be used for the limited purpose of determining defendant's sanity. While testimony of prior arrests, convictions, and antisocial conduct is ordinarily not admissible, such testimony is admissible for the purpose of determining the question of sanity, once defendant has raised such a defense. *People v Woody,* 380 Mich 332, 338; 157 NW2d 201, 203 (1968). See also *People v Schrantz,* 50 Mich App 227; 213 NW2d 257 (1973). Since the testimony was admissible for the limited purpose of determining the question of defendant's sanity, and the trial court so instructed the jury, it follows that defendant Musser was not denied effective

assistance of counsel by reason of counsel's failure to object, nor was she denied a fair trial by reason of the prosecutor's inferences in his closing argument concerning how that testimony related to the question of defendant's insanity.

During the cross-examination by the prosecutor of Dr. Tanay, a psychiatrist called by the defense, the following exchange occurred concerning the report prepared by the witness:

"*Q. (By Mr. Pikkarainen for the prosecution):* And referring further in that same page, page five, I will read the opinion:

" 'In my opinion Raymond L. Humbel is able to stand trial since he does comprehend his own condition in relation to the proceedings, and he can rationally assist his attorney in the conduct of his defense. It is further my opinion that at the time when he committed the acts complained of, he did not suffer from a mental illness which would impair his ability to know the nature and the quality of the acts he was doing, and that he did know these acts were wrong.'

"Is that your conclusion?

"*A.* That is my conclusion, yes.

"*Q.* And further on page five, the last paragraph, I refer you to the statement and it says:

" 'These statements, in my opinion, exclude the possibility of the insanity defense under the current Michigan law.'

"Is that a correct statement?

"*A.* That is my statement, yes.

"*Q.* By these statements you would refer to the statements you have just gone through, is that right?

"*A.* Yes.

"*Q.* So it is your testimony as you understand the Michigan law—

"*The Court:* Let's find out what his understanding of the Michigan law is.

"*Q.* What do you understand the Michigan law to be at this time, Doctor?

"*A.* At the time when I wrote this report it was my understanding that it had to be an irresistible impulse, and the report was typed on March 20, 1972. Subsequent to my rendering this report, my understanding was extended that a recent Supreme Court decision was called to my attention by Mr. Wascha. He sent it to me and asked me to read it, in fact, he sent to me two opinions one an old one, *People v Durfee* and the other one was *People v Martin.* I read it and I sent him my reaction to it on May 17, 1972. He called my attention to the fact that, in his letter addressed to me, and then I read the opinion and I reached the conclusion that my understanding of the law was erroneous.

"*Mr. Wascha (Counsel for defendant Humbel):* Your Honor, excuse me, Doctor, if the Court please, I am going to enter an objection at this time. The Doctor is not qualified as an expert of the law. Number two, the Court will tell the jury what the law is.

"*The Court:* It is the function of the Court to make the legal determination. I wanted to clarify in his statement whether he used the *Durfee* rule or what rule he was using, that would be based on what the law is.

"*Mr. Pikkarainen:* I will appreciate that, Your Honor, I don't think there is—he has indicated that he is an associate professor of law at the Wayne State University.

"*The Court:* That does not qualify him legally. He also has testified that his teaching is in the relationship of the medical or psychiatric area to the law. If the Doctor can lecture in that area it is beyond my comprehension that he would not know and have an opinion as to what the Michigan law is in relation to a psychiatric diagnosis. He brought it up, nobody asked what his legal opinion was. Any more questions?

"*Mr. Wascha:* Go ahead, I will withdraw my objection.

"*Q.* Now, Doctor, you indicated that you were basing your opinion on *People v Durfee,* the old case; is that correct?

"*A.* I state that prior to this date I have never read the original opinion which I am sure very few psychia-

trists have done, and very few lawyers, as I understand. It was made available to me and I read it and the more recent, very recent one I think it is in January, the legal opinion of the *Martin* case, I read that too. The psychiatric facts haven't changed as far as I am concerned. That is what I described in my original report. I did say that Mr. Humbel was in my judgment, sick. My impression was, and my lay impression because I am not a lawyer, was that this would not fall into the insanity defense but it is obviously up to a judge or jury to decide and not for me.

"*Q.* You have testified in a number of cases as you have indicated; is that right?

"*A.* I have testified in a number of cases, yes.

"*Q.* You have had some experience in this area?

"*A.* Yes, I have. But I might say, that the *Martin* decision is a recent one and I don't really keep up with the court decisions unless they are called to my attention.

"*Q.* You indicate that you have read *People v Martin?*

"*A.* Yes, I have.

"*Q.* And you have read *People v Durfee?*

"*A.* Yes, I have.

"*Q.* From the reading of those two cases, as a layman, is it not correct that *People v Martin* did not overturn the *Durfee* rule?

"*Mr. Wascha:* Your Honor, I am going to object to that, he is arguing law.

"*The Court:* You are arguing the law, counsel. *People v Martin,* whatever it says, is for me to determine when we are having the jury charge conferences. The jury charge will be based on what I determine *Martin* to say. But, to ask a lay witness even though he is an expert in other areas, he has testified in court that he is teaching some legal related aspects in a law school, a legal question he is not qualified to answer, in the eyes of the law at least."

On appeal defendant Humbel argues that he was denied his right to a fair and impartial trial, his right to a trial by jury, and his right to due

process of law by reason of the fact that the prosecutor was able to elicit from the defense psychiatrist his opinion and conclusion of law, which thereby usurped the function of the jury.

The question of the propriety of allowing any witness, be he expert or otherwise, to testify as to his opinion of the sanity or insanity of a criminal defendant presents ramifications which appear to have been heretofore unexplored. While there is indeed ample authority indicating that experts and laymen alike can express an opinion as to defendant's sanity,[1] there remains the unanswered question of whether such an expression constitutes an unwarranted invasion of the jury's function. It should be noted that the mere use of the term insanity carries with it not only the question of fact as to defendant's mental state, but also carries with it the legal conclusion that the mental state has a legal significance. There is at least some authority for the proposition that an opinion as to one's mental state, when couched in terms which require reference to a legal standard, constitute an unwarranted and improper invasion of the jury function. See *Kempsey v McGinniss,* 21 Mich 123 (1870); *White v Bailey,* 10 Mich 155 (1862).

We need not attempt to resolve this thorny question, since the question here was not preserved for appellate review. No objection was ever made below on the basis that the doctor's opinion as to the ultimate question of insanity constituted an improper invasion of the jury function. Absent such an objection below, the question is not properly raised on appeal. Further, while defense counsel did object to the prosecutor's inquiry as to the psychiatrist's understanding of the law, counsel

---

[1] *People v Casey,* 124 Mich 279; 82 NW 883 (1900), and *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969).

thereafter withdrew the objection. Again the question has not been preserved for appellate review. Since defense counsel's second objection was sustained by the trial court and the jury was cautioned that the court would determine what the law was, and particularly in light of the absence of a motion to strike the testimony or a motion for a mistrial, the questions sought to be raised are not properly before this Court.

Defendant Humbel argues that the trial court abused its discretion in allowing a photograph of the victim's body as it was found in the swamp to be admitted into evidence and taken to the jury-room by the jury during their deliberations. The photograph in question showed the naked torso, arms, and legs of the victim as she lay face down in a swampy area. Nature had mercifully allowed weeds to grow up around the head thereby cloaking from view the work done by the shotgun blast. While anything but pleasant, the photograph could not really be called ghastly or gruesome.

The question of the admission of photographs of the victim is one addressed to the sound discretion of the trial court. In exercising that discretion the trial court must weigh the probative value of such photographic evidence against the potential prejudicial effect. *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972). The prosecutor below, as well as on appeal, attempted to show how the photograph was necessary, probative, and material. It will suffice to say that the reasons presented showed, at best, that there was limited probative value. We feel that the trial court would have been better advised to refuse to allow the photograph to be admitted into evidence.

That the photograph was of minimal probative value is but half the test to determine whether

reversible error thereby resulted. The other half of the equation is that prejudice must have resulted from the use of the photograph. As noted above, while hardly pretty, the photograph is not what one would term gruesome. Neither does the record demonstrate that the prosecutor sought to have the photograph admitted for the primary purpose of exciting the passions and prejudice of the jury. Since the testimony painted in words a picture of horror and brutality far more gruesome than anything which any camera could capture, the prejudicial effect of the photograph herein considered was minimal. To the extent that the trial court's admission of the photograph was an abuse of discretion, and therefore error, it is clear that the error was harmless beyond a reasonable doubt, did not result in a miscarriage of justice, and did not render defendant's trial inconsistent with substantial justice. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972); MCLA 769.26; MSA 28.1096; GCR 1963, 529.1.

Defendant Humbel lastly asserts error arising out of the trial court's supplemental instructions. During the charge to the jury the trial court stated:

"Now, there is always a presumption of soundness of mind because that is the normal condition of humanity; and in all homicide cases, the people may rest on that presumption until it is overcome by evidence furnished by defendants. In other words, the people do not have to prove sanity until such time as the defendant raises the insanity defense. In the next place, * * * ."

Later in the charge the trial court stated:

"And in this connection you are instructed that the defendants are not required to prove his or her insanity to the satisfaction of the minds of the jury beyond a

reasonable doubt or by a preponderance of the evidence, but it is sufficient to shift the burden to the people if he only introduced enough evidence to raise a reasonable doubt of his sanity at the time of the commission of the alleged offense."

After the jury had commenced deliberation, they made the following request:

"Please explain the charge as pertaining to the degrees of murder and manslaughter and the definition of legal insanity."

During the supplemental instructions the trial court unfortunately repeated the first sentence of the first quoted portion of the instructions, but did not repeat the second sentence of that portion, nor did the court repeat the second quoted portion. No objection was made to the supplemental instruction.

Defendant Humbel, relying on *People v Neumann,* 35 Mich App 193; 192 NW2d 345 (1971), now urges that the jury was misled by the supplemental instruction. Defendant's reliance on *Neumann* is misplaced, since there the trial court clearly indicated that the burden of proof was upon the defendant. While it would have been better for the trial court herein to have said nothing about the burden of proof in the supplemental instructions, the jury being only concerned with the definition of legal insanity, the instructions, when read as a whole, properly apprised the jury of the requisite burden of proof that was upon the plaintiff. *People v Woodfork,* 47 Mich 631; 209 NW2d 829 (1973), *lv den sub nom People v Langston,* 390 Mich 801 (1973).

Neither defendant was present when the supplemental instructions were given, the trial court feeling that their presence was not required. While

we do not approve of this practice and would urge the trial courts of this state to be sure that defendants are present at all proceedings, including supplemental instructions to the jury, we find that the defendants herein were not deprived of any substantial right by their absence from the giving of the supplemental charge. Since the supplemental charge was basically a repetition of the previously given charge, and since we find no substantial error in the instructions as a whole, we are constrained to hold that the error was harmless beyond a reasonable doubt. See *People v La Munion,* 64 Mich 709; 31 NW 593 (1887); *People v Jaskulski,* 236 Mich 237; 210 NW 234 (1926).

Affirmed.

All concurred.