# LISTON G. NOBLE v. STATE OF MARYLAND

[No. 8A, September Term, 1981.]

*Decided June 7, 1982.*

*Motion for reconsideration filed June 21, 1982; denied June 25, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Louis P. Willemin, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Michael A. Anselmi, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court. COLE and DAVIDSON, JJ., dissent. COLE, J., filed a dissenting opinion at page 573 *infra,* in which DAVIDSON, J., concurs.

On May 12, 1976, Liston G. Noble was convicted by a jury in the Criminal Court of Baltimore of felony murder, attempted armed robbery and using a handgun in the commission of a crime of violence. He appealed to the Court of Special Appeals, raising issues concerning the sufficiency of the evidence, the trial court's jury instructions and the prosecutor's closing argument. The intermediate appellate court affirmed in an unreported opinion, and this Court denied Noble's petition for a writ of certiorari. *Noble v. State,* 281 Md. 741 (1977).

More than three years after his conviction, Noble filed in the Criminal Court of Baltimore a petition under the Post Conviction Procedure Act, Maryland Code (1957, 1982 Repl. Vol.), Art. 27, §§ 645A-645J, attacking his convictions on a multitude of grounds. One of those grounds was that Noble had been denied his right under Maryland Rule 724 to be present at every stage of his trial because the voir dire questioning of a prospective juror had taken place at a bench conference which he did not attend.

After the hearing, the post conviction trial court filed an extensive opinion dealing with all of Noble's contentions. The court granted relief with respect to the attempted armed robbery conviction, holding that it merged into the felony murder conviction under the principles of *State v. Frye,* 283 Md. 709, 393 A.2d 1372 (1978), and *Newton v. State,* 280 Md. 260, 373 A.2d 262 (1977); otherwise, the court denied the post conviction petition. With regard to the contention that

there had been a violation of Noble's right to be present at every stage of his trial, the post conviction trial court found that any violation of Noble's right to be present under Rule 724 was harmless error because the possible prejudice on the part of the prospective juror was against Noble, and the trial judge had excused the prospective juror.

Noble filed in the Court of Special Appeals an application for leave to appeal. The Court of Special Appeals granted the application and remanded the case to the Criminal Court of Baltimore for further proceedings on the post conviction petition, *Noble v. State,* 46 Md.App. 154, 416 A.2d 757 (1980). Initially, the intermediate appellate court disagreed with the harmless error ruling by the post conviction trial court, stating (46 Md.App. at 156-157):

> "The hearing judge found that any error which may have occurred was harmless because the juror was excused by the trial judge and did not sit on the jury. Although we find it difficult to see how the applicant was injured here, the cases are legion which state that the Maryland Rules are precise rubrics to be read and followed. *See, e.g., Countess v. State,* 286 Md. 444, 408 A.2d 1302 (1979). It seems minor discrepancies might be permitted. *Terrell v. State,* 34 Md.App. 418, 421-22, 367 A.2d 95 (1977). We think the hearing judge was in error in the instant case under *Bunch v. State,* 281 Md. 680, 381 A.2d 1142 (1978)."

The Court of Special Appeals then held that Noble may have waived his right to be present at the bench conference by "inaction" and remanded the case for the post conviction trial court to consider the issue of waiver.

Upon remand, a further hearing was held at which Noble reiterated that, at the jury impaneling stage of his trial, he was not present at a bench conference involving the voir dire questioning and excusing of one prospective juror. He further testified that he had never previously been involved in a jury trial, that his counsel had not explained to him the jury impaneling process, that he "knew nothing about the

impaneling process," that he "had no idea what was going on at the bench" conference, and that "[h]ad I known I had a right to be there, I would have requested to be there." Noble's attorney at his criminal trial also testified at the hearing, stating that he could not recall whether or not he may have advised Noble of his right to be present at the bench conference.

Following the hearing pursuant to the remand, the post conviction trial judge rendered another opinion holding that Noble was not present at the bench conference and that his "inaction constituted a waiver of his right to be present at the conference." The court denied Noble any further relief under the Post Conviction Procedure Act.

Noble again filed an application for leave to appeal which was granted by the Court of Special Appeals. Instead of deciding the merits, however, the Court of Special Appeals certified the case to this Court pursuant to Rule 1015.[1] The certification order stated:

> "This Court, in *Noble v. State,* 46 Md.App. 154, 161 (1980), a post conviction application for leave to appeal, held that a defendant waives his right to raise the issue that he was not present at a bench conference dealing with voir dire of the jury, unless he timely objects, even though he subsequently

1. Maryland Rule 1015 provides as follows:

"Rule 1015. Certification of Cases to the Court of Appeals.

a. *Initiating Certification Procedure.*

This Court [the Court of Special Appeals] or a panel of not less than three judges to which a case shall have been submitted for disposition may, at any time before final judgment in a case, certify a question of law or the entire matter in controversy to the Court of Appeals to be considered by that Court pursuant to the authority of the Court of Appeals to issue a writ of certiorari on its own motion.

b. *Certification Application — Content.*

Whenever a question of law or the entire matter in controversy is certified to the Court of Appeals pursuant to section a, the certification application shall contain a statement of the nature of the case and the facts on which the question of law arises or the reason or reasons for certifying the entire matter. A copy of the certification application shall be forwarded to the Chief Judge of this Court simultaneously with its transmission to the Court of Appeals."

professes not to know that he had the right to be present at the time. The matter was remanded to the Criminal Court of Baltimore to determine whether Noble waived his right to be present at the voir dire.

"*Noble v. State,* as reported in 46 Md.App. 154, would, if viable, be dispositive of this Appeal . . . as well as some other applications now pending. . . .

"The question certified is whether *Noble v. State,* 46 Md.App. 154 (1980), correctly sets forth the law of Maryland?"

In accordance with Rule 815, this Court enlarged the certification application to include the question of harmless error and issued a writ of certiorari.[2]

I.

After the issuance of the writ of certiorari but before oral argument in this case, we rendered an opinion in *Williams v. State,* 292 Md. 201, 438 A.2d 1301 (1981). *Williams*

---

**2.** Rule 815 states:

"Rule 815. Procedure in Certified Cases From Court of Special Appeals.
 a. *Docketing and Notification.*
 When a case is certified by the Court of Special Appeals in accordance with Rule 1015, the Clerk of this Court will docket the case and notify the parties.
 b. *Determination Whether to Accept.*
 After docketing, the certification application shall be submitted to this Court for preliminary examination to determine whether the application will be (1) accepted as submitted, (2) modified, (3) enlarged to include the entire matter if certified as to a question of law only, (4) limited to a question of law only, if certified as to the entire matter, or (5) dismissed. No brief may be filed prior to the preliminary examination of the application.
 c. *Issuance of Writ of Certiorari Upon Acceptance.*
 If, after preliminary examination, the Court issues the writ of certiorari on its own motion, the order will direct briefs and record extracts to be filed, if not previously filed in the Court of Special Appeals, and the parties shall be so notified. Briefs and record extracts shall be filed in the manner provided in and subject to the provisions of Rules 828, 830, 831 and 832."

involved the voir dire questioning of prospective jurors at a bench conference attended by counsel but not the defendant. Initially in *Williams,* we observed that under our cases "a bench conference involving communications between the court and jurors or prospective jurors, relating to juror impartiality or disqualification, is a stage of the trial at which the defendant has a right to be personally present," 292 Md. at 212. We then held in *Williams* that under the law of this State as it then existed, a criminal defendant's right to be present at every stage of the trial could not be effectively waived by counsel or by the defendant's mere silence. Instead, we pointed out that under a long line of cases in this Court an effective waiver of the right to be present must be by the defendant *personally* and must be done *expressly.*[3] Inaction by the defendant or his counsel would not suffice.

In the *Williams* opinion, we also modified for future cases the Maryland common law rule concerning waiver of the defendant's right to be present. We expressed the view that the then existing rule had become unsound in light of modern trial conditions, stating (292 Md. at 218, 438 A.2d at 1309):

> "Today, with the complexity of many criminal trials and the absolute right of counsel if there is a danger of incarceration, our system proceeds upon the assumption that it is primarily counsel's function to assert or waive most 'rights' of the defendant. Unless a defendant speaks out, normally he must be bound by the trial decisions, actions and inactions of counsel. Otherwise, the system simply would not work. *Estelle v. Williams,* 425 U.S. 501, 512, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *Curtis v. State, supra,* 284 Md. at 145-149, 395 A.2d 464.

The Court concluded in *Williams* (292 Md. at 219-220; 438 A.2d at 1310):

---

3. *See, e.g.,* Porter v. State, 289 Md. 349, 353, 424 A.2d 371 (1981); Bunch v. State, 281 Md. 680, 688, 381 A.2d 1142 (1978); Midgett v. State, 216 Md. 26, 37, 139 A.2d 209 (1958); Duffy v. State, 151 Md. 456, 472-477, 135 A. 189 (1926); Dutton v. State, 123 Md. 373, 389, 91 A. 417 (1914).

"With respect to all criminal trials, or parts of trials, taking place after the issuance of our mandate in this case, an effective waiver of the defendant's right to be present at every stage of the trial will not always require a personal waiver by the defendant. Where the right of confrontation is not implicated, and where there is involved no other right requiring intelligent and knowing action by the defendant himself for an effective waiver, a defendant will ordinarily be bound by the action or inaction of his attorney.

\* \* \*

"[I]f the defendant himself does not affirmatively ask to be present at such occurrences or does not express an objection at the time, and if his attorney consents to his absence or says nothing regarding the matter, the right to be present will be deemed to have been waived."

As pointed out in the above quotation, the change in the law announced in *Williams* applied only to trials or parts of trials taking place after the issuance of our mandate in that case, which was on December 28, 1981. Noble's trial, of course, took place long before that time. Consequently, the waiver issue in this case is governed by the former principle that ordinarily an effective waiver of the right to be present could only be accomplished by the defendant personally and expressly. In light of this standard, Noble clearly did not waive his right to be present at the voir dire examination of the prospective juror at the bench conference.

## II.

Although saying that it was difficult to see how Noble was injured by his absence at the bench conference, the Court of Special Appeals seemed to hold that, because "the Maryland Rules are precise rubrics to be read and followed," a violation of the rules, including a violation of the right to be present

under Rule 724, could not be harmless error. 46 Md.App. at 156-157. The defendant's position concerning the applicability of the harmless error doctrine is somewhat narrower than that adopted by the Court of Special Appeals. While not arguing generally that the concept of harmless error is inapplicable to violations of the criminal rules, the defendant does contend that a violation of the defendant's right to be present during a stage of the trial can never be harmless (petitioner's brief, pp. 6-8). In our view, neither the position of the Court of Special Appeals nor the defendant's position is sound.

(a)

This Court has firmly adhered to the principle that the rules of procedure are precise rubrics to be strictly followed, and we shall continue to do so. A violation of one of these rules constitutes error, normally requiring such curative action or sanction as may be appropriate.

Rule 724 guarantees to a criminal defendant the right to be present at every stage of his trial, including the impaneling of the jury.[4] Unless a defendant waives his right

---

4. Rule 724 in its entirety reads as follows:

"Rule 724. Presence of the Defendant.

 a. *When Presence Required.*

The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as provided by these Rules.

 b. *When Presence Not Required.*

A defendant need not be present:

 1. At a conference or argument on a question of law.

 2. When a *nolle prosequi* or stet is entered pursuant to Rule 782 (*Nolle Prosequi* and Stet).

 3. At a reduction of sentence pursuant to Rule 773 (Sentence — Review) or Rule 774 (Sentence — Revisory Power of Court);

 4. At any stage of the proceedings if the defendant is a corporation.

 c. *When Presence Waived.*

A defendant initially at trial waives his right to be present when:

 1. He voluntarily absents himself after the trial has commenced,

to be present, a violation of this rule is error which ordinarily results in granting a new trial. *Williams v. State, supra; Bunch v. State, supra.*

It does not follow, however, that the harmless error doctrine has no application to the Maryland Rules and that a violation of a procedural rule can never be harmless. There is no basis in authority or logic for such a holding. It is true that the violations of certain rules, because of the nature and purpose of those particular rules, can rarely be deemed harmless error. Some examples include Rule 723 (c) (d) (e) (waiver of right to counsel); Rule 731 (c) (acceptance of guilty plea); Rule 735 (d) (waiver of right to jury trial); Rule 746 (speedy trial). Nevertheless, this Court has not held that the harmless error principle can never be applicable to a violation of the criminal rules.

On the contrary, we have on several occasions held that violations of the rules of criminal procedure constituted harmless error. For example, in *Johnson v. State,* 283 Md. 196, 388 A.2d 926 (1978), we pointed out that the provision of Rule 755, requiring that the court, "upon the request of a party, shall order that a witness be excluded from the courtroom until called upon to testify," was mandatory and not discretionary on the part of the trial judge, and that it contained no exception for the State's principal investigator. For this reason, it was held that the trial judge erred in not excluding the State's principal investigator. 283 Md. at 199. We went on to hold, however, that under the circumstances "the error of the trial court was harmless beyond a reasonable doubt, in no way contributing to the conviction." *Id.* at 203. Another recent case applying the harmless error principle to a violation of a rule of criminal procedure is *Wiener v. State,* 290 Md. 425, 450-451, 430 A.2d 588, 602 (1981) (involving Rule 772 c 1, which requires that the State disclose to the defense any information which the State expects to present at the sentencing hearing). ·

whether or not he has been informed by the court of his right to remain during trial; or

2. He engages in conduct to justify his being excluded from the courtroom."

Consequently, the Maryland Rules of criminal procedure are not exempt from the harmless error principle. If the standard for harmless error is met, a violation of a procedural rule will not ordinarily result in a reversal of a conviction.[5]

## (b)

In arguing that a violation of the right to be present during a stage of the trial can never be harmless, the defendant relies upon *State v. Saul,* 258 Md. 100, 265 A.2d 178 (1970), affirming *Saul v. State,* 6 Md.App. 540, 252 A.2d 282 (1969); and *Young v. State,* 5 Md.App. 383, 247 A.2d 751 (1968). The opinions in *Young* and *Saul* do support the defendant's position. Nevertheless, that position is contrary to other cases in this Court, as well as the majority of cases throughout the country. Moreover, neither the defendant nor the two opinions relied on offer any reason why a criminal conviction should be reversed when the record affirmatively demonstrates that the defendant was not harmed by his absence from a stage of the trial.

*Duffy v. State,* 151 Md. 456, 135 A. 189 (1926), is the first case in this Court involving a contention that the defendant's absence from a stage of the trial was harmless. The defendant was not present when a supplemental jury instruction was given, and the State argued that the "violation of [the right to be present] would not be reversible error unless injury were shown." 151 Md. at 473. This Court rejected the State's argument and reversed, stating (*id.* at 476-477, emphasis supplied):

> "It is true that the court certifies that the instructions, given in the absence of the prisoner, were the

---

5. The test for harmless error in criminal cases was set forth in Dorsey v. State, 276 Md. 638, 659, 350 A.2d 665 (1976), as follows:

"[W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated."

same as those given in his presence, but it also appears that the jury did not understand the instructions given in his presence, or they would not have asked for further instructions. What those instructions were, or what was written on the memorandum which guided the foreman in announcing the verdicts, does not appear in the record. It may be that it was a mere form of verdict and that it did not injure the defendant, *but in dealing with an absolute constitutional right, the citizen ought not to be at the mercy of speculation as to whether the violation of it did or did not injure him.* Since the jury did not understand the instructions as first given, it may have been that the prisoner, if present, when they were instructed a second time, would have asked that they be made clearer, or he may have objected to their form. They covered fourteen separate counts contained in four indictments, and they related, so far as he was concerned, to the most vital thing in the case, the verdict of the jury. If we held that under such circumstances he had no right to be present, it is not easy to say under what circumstances his presence would be essential.

After careful consideration of the question and the authorities, in our opinion, the instruction of the jury as to the form of their verdict was a part of the trial, and in giving it during the involuntary absence of the prisoner, while he was in custody of the police, the court erred, and injury must be attributed to that error."

Thus *Duffy* held that, if the record is silent as to prejudice resulting from a violation of the defendant's right to be present, an appellate court will not "speculate" as to harm; instead prejudice will be presumed, and the conviction will be reversed. However, the Court did not hold that where the record clearly shows a lack of prejudice, the conviction would still be reversed. Rather, the Court in the

above-quoted material pointed to the type of injury which the defendant may have suffered by his absence.

The next pertinent opinion is *La Guardia v. State,* 190 Md. 450, 58 A.2d 913 (1948), which, like *Duffy,* involved a supplemental jury instruction when the defendants were not present. *La Guardia* was a joint trial of three defendants for rape, which at that time was punishable by death if the court so decided. In *La Guardia,* all three defendants were convicted but only two of them appealed. The trial court, with the defendants present, had included within the initial charge to the jury the instruction that the jurors "had the right in their discretion to make any recommendation of mercy which they desired to make if they found the defendants guilty." 190 Md. at 458. During their deliberations, the jury sent a message to the court asking "whether less than twelve jurors could recommend mercy for one of the defendants." *Id.* at 458-459. The court, with the defendants absent, sent the jury a supplemental written instruction "that less than twelve could recommend mercy." *Id.* at 459. Some of the jurors, although less than a majority, recommended mercy for the defendant who did not appeal. However, no juror made any recommendation concerning either of the defendants who later appealed. On appeal, the two appellants claimed that the submission of the supplemental instruction, when they were not present, constituted reversible error. This Court rejected the argument, holding that the record demonstrated that the denial of the right to be present was harmless with regard to the two appellants. After discussing *Duffy* and pointing to the possible harm which may have existed in that case, the Court stated in *La Guardia* (*id.* at 458):

"We hold that if the record shows affirmatively that the appellant was prejudiced by an improper communication of the judge with the jury, there is reversible error; and also that if the record shows error by such communication, but does not show whether or not the error was prejudicial, it is presumed to be prejudicial and requires a reversal.

> *Little v. United States,* 10 Cir., 73 F.2d 861, 96
> A.L.R. 889; *Ah Fook Chang v. United States,* 9 Cir.,
> 91 F.2d 805, 810. On the other hand, if the record
> shows affirmatively that the communication had no
> 'tendency to influence the verdict' (*Duffy v. State,*
> 151 Md. 456, 474, 135 A. 189, 195), the judge's
> impropriety in communicating with the jury out of
> the presence of the defendant does not require a
> reversal."

The above-quoted harmless error standard is, in substance,
the same as the general test for harmless error in criminal
cases adopted by us in *Dorsey v. State,* 276 Md. 638, 659, 350
A.2d 665 (1976).[6]

Supplemental communications from the court to the jury,
outside of the defendant's presence, were also involved in
*Midgett v. State,* 216 Md. 26, 139 A.2d 209 (1958). The defen-
dant in *Midgett* was charged with kidnapping, and, after the
jury was instructed and retired to deliberate, the foreman
sent a note to the court asking: "If found guilty of kidnapping
can we be assured the death penalty will not be given?" The
court replied by writing on the note the word "Yes." Neither
the defendant nor his attorney was present at this time.
Later, another note from the jury asked: "Can the verdict be
stated guilty of kidnapping with assurance of no death pen-
alty?" The court replied in writing, in the presence of counsel
but not the defendant, as follows: "If verdict is guilty, death
sentence will not be imposed." Then the court, again with
counsel but not the defendant present, dictated a statement
into the record setting forth what had transpired. The defen-
dant was convicted of kidnapping, and this Court reversed
on the ground that he had a right to be present on the two
occasions when the trial court undertook to answer the jury's
question. Nevertheless, this Court also reaffirmed the
harmless error test set forth in *La Guardia.* The Court stated
in *Midgett* (216 Md. at 36-37):

---

**6.** *See* n. 5, *supra.*

"In this State there is no doubt that an accused in a criminal prosecution for a felony has the absolute right to be present at every stage of his trial from the time the jury is impaneled until it reaches a verdict or is discharged, and there can be no valid trial or judgment unless he has been afforded that right. The constitutional guarantee includes the right of the accused to be present (i) when the jury is charged or instructed on the facts, the law or the form of the verdict, before it has begun its deliberations or afterwards upon its request or by direction of the court; (ii) when the court is repeating a charge or instruction previously given in whole or in part; (iii) when the court communicates with the jury in answer to questions propounded by the jury, or (iv) when there shall be any communication whatsoever between the court and the jury; *unless* the record affirmatively shows that such communications were not prejudicial or had no tendency to influence the verdict of the jury. Furthermore, the right to be present is personal to the accused and cannot be waived by his counsel. *Duffy v. State,* 151 Md. 456, 135 A. 189 (1926); *La Guardia v. State,* 190 Md. 450, 58 A.2d 913 (1948); Constitution of Maryland, Declaration of Rights, Art. 5."

Consequently, the *La Guardia* and *Midgett* Cases held that, if a record affirmatively shows that the denial of the right to be present at a stage of a criminal trial did not prejudice the defendant, the error would be deemed harmless. This recognition that the harmless error rule applies to the right to be present is in accord with the majority of cases throughout the country. *See, e.g., Rogers v. United States,* 422 U.S. 35, 40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1 (1975); *United States v. Alessandrello,* 637 F.2d 131, 138-141 (3d Cir. 1980), *cert. denied,* 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981); *United States v. Gay,* 522 F.2d 429, 435 (6th Cir. 1975); *United States v. Alper,* 449 F.2d 1223, 1232-1233 (3d Cir. 1971), *cert. denied,* 405 U.S.

988, 92 S.Ct. 1248, 31 L.Ed.2d 453 (1972); *State v. Isaac,* 261 La. 487, 260 So.2d 302 (1972); *People v. Carroll,* 49 Mich.App. 44, 211 N.W.2d 233 (1973); *State v. Savan,* 148 Or. 423, 36 P.2d 594, 96 A.L.R. 497 (1934).[7]

The contrary view in this State, namely that the absence of the defendant from a state of the trial can never be harmless, seems to have begun with the Court of Special Appeals' opinion (although not necessarily its decision) in *Young v. State, supra.* In that case, as in *Duffy, La Guardia* and *Midgett,* after the jury had been instructed and retired, the foreman sent a note to the court asking a question relevant to the jury's deliberations. The question concerned the probative value of certain evidence to establish assault with intent to murder, which was one of the offenses charged. Instead of replying in writing as was done in *La Guardia* and *Midgett,* the trial court in *Young* had the jury returned to the box, and the court answered the question by a supplemental oral instruction regarding the offense. Neither the defendant nor his attorney was present in the courtroom during this supplemental instruction. The jury acquitted the defendant of assault with intent to murder and convicted him of assault and battery. The Court of Special Appeals reversed the conviction in *Young* on two alternate grounds. First, it was held that giving the supplemental oral instruction to the jury when the defendant's attorney was absent amounted to a violation of the right to counsel guaranteed by the Sixth Amendment to the United States Constitution and Art. 21 of the Maryland Declaration of Rights. 5 Md.App. at 386-388. Second, the Court of Special Appeals held that giving the supplemental instruction

---

**7.** There is a minority position, expressed more in older cases perhaps, that a denial of the right to be present during a stage of the trial, particularly in a felony prosecution, can never be harmless. The rationale for this view seems to be that a "court has no jurisdiction to try an indictment for a felony unless the accused be present," and that "[a] trial, wholly or in part, conducted in his [the defendant's] absence is illegal," Maurer v. The People, 43 N.Y. 1, 5 (1870). This view was an alternate ground for decision in the *Maurer* case, as the court also held that the record failed to establish the absence of prejudice. 43 N.Y. at 5. *See also* the review of some authorities by this Court in *Duffy,* 151 Md. at 473-475.

during the defendant's involuntary absence violated his right to be present at every stage of the trial. *Id.* at 388-394.

With regard to the second ground in *Young,* the State argued that because the supplemental instruction related to a charge on which the defendant had been acquitted, the record affirmatively showed that the defendant's absence was harmless. The State relied on the previously quoted passage from *Midgett v. State, supra,* 216 Md. at 36-37, reiterating the test of harmless error with respect to communications from the court to the jury. 5 Md.App. 389-390. The Court of Special Appeals, however, did not decide whether or not the harmless error standard was met under the circumstances. Instead, it rejected the State's argument on the theory that the doctrine of harmless error has no application to a denial of the right to be present during a stage of the trial, and that the "harmless error" passage from *Midgett,* relied on by the State, applied only to events which did not constitute stages of the trial. The Court of Special Appeals held that a jury *instruction* is a stage of the trial, and that the harmless error principle is therefore inapplicable, whereas a mere *communication* with the jury is not a stage of the trial, and that the defendant's absence during such communication should be judged by the harmless error test of *Midgett* and *La Guardia.* The intermediate appellate court thus stated in *Young* (*id.* at 390, emphasis supplied):

> "We do not believe that this [the State's] construction of the passage [from *Midgett]* is compatible with the statement of the Court immediately preceding it that an accused has 'the absolute right' to be present at every stage of his trial and that there can be no valid trial or judgment unless the accused has been afforded that right. We think that the Court [in *Midgett]* distinguished between 'instruction or charge' on the one hand and 'communication' with the jury on the other hand. Intercourse between the judge and the jury as to the facts, the law or the form of verdict would necessar-

ily be a 'charge or instruction' and intercourse be-
tween the judge and jury as to matters other than
those would be a 'communication.' So when the
judge 'communicates with the jury in answer to
questions propounded by them,' it may be a 'charge
or instruction' or merely a 'communication'
depending on the subject matter. *Since the instruc-
tion or charge of the jury is a part of the trial, as we
have stated supra, the accused has the absolute
right to be present when a charge or instruction is
given. But a mere 'communication' by the judge to
the jury is not a part of the trial and the accused is
not entitled to be present as a matter of right.* But
even then there is reversible error 'unless the rec-
ord affirmatively shows that such communications
were not prejudicial or had no tendency to influence
the verdict of the jury.' "

The Court of Special Appeals went on in *Young* to distin-
guish *La Guardia* on the ground that the statement from the
court to the jury in that case, telling the jury that less than
twelve could recommend mercy, "was not an instruction and
the presence of the defendants was not required." 5 Md.App.
at 393.

The holding of *Young* was reaffirmed by the Court of Spe-
cial Appeals in *Saul v. State, supra,* 6 Md.App. at 545-547.
In that case, after the jury was instructed and began delib-
erations, it sent the court a note asking for a copy of a
relevant section of the Maryland Code. The trial court, with
the defendant absent, sent the jury a photostatic copy of the
statute requested. In reversing the conviction, a divided
Court of Special Appeals held that the submission of the copy
of a statute constituted an "instruction" which, under
*Young,* resulted "in a conclusive presumption of prejudice as
given during the involuntary absence of the appellant." *Id.*
at 546, 547. Chief Judge Murphy, then Chief Judge of the
Court of Special Appeals, dissented on the ground that the
submission of the document during the defendant's absence
constituted harmless error. *Id.* at 555. This Court granted

the State's petition for a writ of certiorari in *Saul* and, also by a divided vote, affirmed. *State v. Saul. supra.* The State argued in this Court that *Young* had misconstrued the opinion in *Midgett.* This Court rejected that argument and, quoting extensively from the *Young* opinion, expressly approved of the *Young* holding regarding harmless error. 258 Md. at 104-108. The Court also agreed with the Court of Special Appeals that sending the copy of the statute to the jury was an instruction "and since this was done during Saul's involuntary absence there arises a conclusive presumption of prejudice." *Id.* at 107.

In our view, the theory adopted in *Young* and *Saul* is unsound. Those opinions limited the harmless error doctrine to events which were not regarded as stages of the trial, and held that prejudice was conclusively presumed if the defendant was absent from a stage of the trial. This view cannot be squared with *La Guardia, Midgett* or logic. In dealing with the right to be present, and the applicability of the harmless error principle to a denial of that right, both *La Guardia* and *Midgett* were speaking only of presence during *stages of the trial.* Thus, the Court in *La Guardia* began by setting forth "the rule entitling the defendant to be present at *every stage of the trial* from the time the jury is impaneled until it renders its verdict." 190 Md. at 457, emphasis supplied. It went on to hold that a violation of this rule could be harmless error, *id.* at 458. Similarly the passage from *Midgett,* which was relied on in *Young* and *Saul,* and which enunciated four categories of jury instructions and communications as examples of events during which the defendant had a right to be present, related only to instructions and communications during stages of the trial. The passage from *Midgett* initially referred to the defendant's "absolute right to be present *at every stage of his trial* from the time the jury is impaneled until it reaches a verdict or is discharged . . . ." 216 Md. at 36, emphasis supplied. The Court then stated that this "guarantee *includes* the right of the accused to be present (i) when the jury is charged or instructed . . .; (ii) when the court is repeating a charge or instruction . . .; (iii) when the court communicates with the

jury in answer to questions . . . [etc.]; *unless* the record affirmatively shows that such communications were not prejudicial . . . ." *Ibid.*, emphasis supplied in part. Obviously, the *Midgett* opinion repeated the *La Guardia* harmless error test only in connection with stages of the trial.[8]

Moreover, with respect to the right to be present, it would be illogical to hold that the harmless error doctrine applies only to events which are not stages of the trial. If an event does not constitute a "stage of the trial" under our cases, a criminal defendant ordinarily has no right to be present. His exclusion from such an event normally does not constitute error. *Porter v. State,* 289 Md. 349, 353-354, 358, 424 A.2d 371 (1981); *Hughes v. State,* 288 Md. 216, 224-226, 421 A.2d 69 (1980); *Bunch v. State, supra,* 281 Md. at 684-685; *Brown v. State,* 272 Md. 450, 477, 325 A.2d 557 (1974); *Martin v. State,* 228 Md. 311, 316-317, 179 A.2d 865 (1962). And if the defendant's absence from such an event does not constitute error, there is no occasion to consider whether any "error" was harmless.

We hold, therefore, that the harmless error principle is fully applicable to a defendant's right to be present during a stage of the trial. Prejudice will not be conclusively presumed. If the record demonstrates beyond a reasonable

---

8. In construing *Midgett* as limiting the harmless error doctrine to events not constituting stages of the trial, the *Young* and *Saul* opinions pointed to the use of the word "communications" in the harmless error language from *Midgett,* speculated that the *Midgett* opinion was distinguishing between "instructions" and "communications," and concluded that the difference between jury "instructions" and "mere" jury "communications" was that the former constituted stages of the trial whereas the latter did not. *Young,* 5 Md. App. at 390; *Saul,* 258 Md. at 106-107. However, because of the punctuation used, and because jury instructions are types of communications from the court to the jury, it is doubtful if the *Midgett* opinion was distinguishing between "instructions" and other "communications" for purposes of the harmless error rule. Furthermore, even if *Midgett* were differentiating between "instructions" and other "communications" for harmless error purposes, there is no basis for the conclusion that the Court in *Midgett* intended to restrict the harmless error rule to events not constituting stages of the trial.

The Court in *Young* also relied upon the statement in *Midgett* that the right to be present during a stage of the trial is an "absolute right." 216 Md. at 36. The adjective "absolute," however, merely characterizes the nature of the right itself, suggesting that it is not limited or conditioned. It does not refer to the appropriate sanction for a violation of the right.

doubt that the denial of the right could not have prejudiced the defendant, the error will not result in a reversal of his conviction. As *State v. Saul* is to the contrary, that case is overruled. Similarly, the "harmless error" discussion in *Young v. State* is disapproved.[9]

## III.

The final question in this case is whether the violation of the defendant's right to be present during the voir dire questioning of a prospective juror at a bench conference was harmless error.

Except for the bench conference involving one prospective juror, the voir dire questioning of all prospective jurors took place in open court, with counsel, the defendant and each member of the panel of prospective jurors hearing everything that was said. The portion of the trial transcript relevant to the issue before us reads as follows (italics added):

"THE COURT: Is there any member of the jury panel who has been a victim of a crime of violence. Either they or members of their immediate family?

"A JUROR: Criminal Court Part Five, Number

---

**9.** Although disapproving of that portion of the *Young* opinion relating to harmless error, we express no view concerning the decision in that case. As previously mentioned, the conclusive presumption of prejudice was only an alternate ground for the result in *Young*. Also, the defendant's absence during the supplemental jury instruction in *Young* arguably may not in fact have been harmless under the test set forth in *La Guardia*, *Midgett* and *Dorsey*. Unlike the situation in *La Guardia* and *Saul* where the supplemental "instructions" were given in writing, in *Young* the jury was returned to the box and orally instructed in the courtroom. Under these circumstances it could be contended that, regardless of the correctness of the instruction or the fact that the defendant was convicted of a different offense, he was nevertheless deprived of the benefit of facing the jury when it was in the box being instructed on the law. If present he may "have produced an impression upon the jury favorable to himself." Maurer v. The People, *supra,* 43 N.Y. at 5. But *cf.,* State v. Bustamante, 103 Ariz. 551, 447 P.2d 243, 245-246 (1968); People v. Musser, 53 Mich.App. 683, 219 N.W.2d 781, 787 (1974); State v. Schifsky, 243 Minn. 533, 69 N W.2d 89, 96-98 (1955); State v. White, 191 Neb. 772, 217 N.W.2d 916 (1974).

fifteen. Assault and robbery on my aunt in 1975. I was a victim of an assault and robbery in 1975.

"THE COURT: Would that prevent you from giving a fair and impartial trial in this case?

"THE JUROR: No it would not.

"A JUROR: *I would like to approach the Bench with defense attorney and the prosecutor.*

"THE COURT: *All right.*

"(BENCH CONFERENCE)

"THE JUROR: *Part Four, I'm Mr. Roy. My father and brother were both murdered in the city, no arrests have been made in the case.*

"THE COURT: *Well I have a feeling that probably would make it pretty difficult for you to sit on a jury of this kind. I'm going to excuse you.*

"MR. ROY: All right, thank you.

"(END OF BENCH CONFERENCE)

"A JUROR: Part four, Judge Sklar. My son was a victim of a violent crime.

"THE COURT: Would that prevent you from giving a fair and impartial trial in this case?

"THE JUROR: No.

"THE COURT: That's Mr. Irby.

"A JUROR: Judge Sklar's panel, number seventeen. Johnson. I was the victim of a holdup.

"THE COURT: Would that prevent you from giving a fair and impartial trial in this case?

"MR. JOHNSON: To be honest I don't know.

"THE COURT: Well if you don't know then I think in an excess of caution I ought to excuse you. I will excuse you. All right, gentlemen, any other questions.

"DEFENSE COUNSEL: No, Your Honor.

"THE COURT: Mr. Breslow, any other questions?

"PROSECUTING ATTORNEY: The State has none."

The only matter which took place out of the defendant's hearing was the statement of the prospective juror Mr. Roy that his father and brother were murdered and that no arrests have been made, and the trial judge's statement that Mr. Roy would be excused.

When a defendant is absent from a stage of the trial involving the possible disqualification of jurors or prospective jurors for bias, and one or more of them are ultimately retained, it would normally be difficult to conclude that the violation of the defendant's right to be present was harmless. *See United States v. Crutcher,* 405 F.2d 239, 244 (2d Cir. 1968), *cert. denied,* 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969); *Commonwealth v. Robichaud,* 358 Mass. 300, 301, 303, 264 N.E.2d 374 (1970); *Commonwealth v. Graves,* 238 Pa. Super. 452, 356 A.2d 813 (1976). As the Second Circuit observed in the *Crutcher* case, quoting in part from *Lewis v. United States,* 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892), and earlier authorities:

> "[W]e can only speculate as to what suggestions [the defendant] might or might not have made, since it would be his prerogative to challenge a juror simply on the basis of the ' "sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another." ' Thus, . . . the government has not been able to convince us that [the defendant] might not have been prejudiced by being absent [when the jury was impanelled]." 405 F.2d at 244.

On the other hand, when the prejudice or possible prejudice of a juror or prospective juror is against the defendant, and that juror is excused at a proceeding from which the defendant is absent, the defendant would not ordinarily be harmed. In this situation, the court's ruling is entirely favorable to the defendant. Even if he were present, it is difficult to imagine what more the defendant could have

obtained. Under such circumstances, courts have held that the absence of the defendant was harmless. *See United States v. Brown,* 571 F.2d 980, 986-989 (6th Cir. 1978); *United States v. Lustig,* 555 F.2d 737, 745 (9th Cir.), *cert. denied,* 434 U.S. 926, 98 S.Ct. 408, 54 L.Ed.2d 285 (1977); *United States v. Florea,* 541 F.2d 568, 572-573 (6th Cir. 1976), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977); *United States v. Baca,* 494 F.2d 424, 427-429 (10th Cir. 1974); *Henderson v. United States,* 419 F.2d 1277 (5th Cir. 1970); *People v. Carroll, supra,* 49 Mich.App. 44; *State v. Savan, supra,* 148 Or. 423; *Powers v. The State,* 23 Tex.App. 42, 62-63, 5 S.W. 153 (1887).[10]

Nevertheless, the defendant in the case at bar advances the following theory as to how his absence from the bench conference was prejudicial. The defendant contends that if he had been present at the bench conference, he "might" have asked the prospective juror Mr. Roy whether Mr. Roy had told any of the other prospective jurors that Roy's father and brother were victims of violent crimes. And if Mr. Roy's answer had been in the affirmative, the argument continues, the answer may have led to the discovery of bias on the part of some other juror.

The record in this case, however, undermines the defendant's speculative argument. The defendant testified at the post conviction hearing that he "knew nothing about the [jury] impaneling process." Thus, it is extremely doubtful that he would have questioned Mr. Roy as suggested. This is confirmed by the fact that three other prospective jurors stated in open court, in the defendant's hearing, that they or

---

10. We note, however, that several cases would not support the distinction we have drawn. In fact, as to whether it is harmless error for a defendant to be absent from proceedings concerned with retaining or excusing a juror or prospective juror for cause, the cases run the gamut of possible decisions. *E.g., Compare* State v. Carver, 94 Idaho 677, 679-681, 496 P.2d 676 (1972), and People v. Medcoff, 344 Mich. 108, 117-118, 73 N.W.2d 537 (1955), *with* United States v. Allessandrello, 637 F.2d 131 (3d Cir. 1980), *cert. denied,* 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981); People v. Morgan, 400 Mich. 527, 255 N.W.2d 603, *cert. denied,* 434 U.S. 967, 98 S.Ct. 511, 54 L.Ed.2d 454 (1977) (explicitly rejecting the view taken in People v. Medcoff, *supra*), and People v. Ganett, 68 A.D.2d 81, 416 N.Y.S.2d 914, 917-918 (1979), *aff'd,* 51 N.Y.2d 991, 435 N.Y.S.2d 976 (1980). *See also Anno: Impaneling Jury — Accused's Absence,* 26 A.L.R.2d 762.

members of their immediate families had been victims of violent crimes, and the defendant failed to question them as to what may have been told to other prospective jurors. Moreover, all of the other prospective jurors heard these three answer in the affirmative to the court's question concerning victims of violent crimes, and heard Mr. Roy ask to approach the bench in response to the question. It is hard to imagine how any of them might have been affected any more by having been told what Mr. Roy imparted to the trial court. Finally, Mr. Roy, instead of answering the court's question in front of all prospective jurors, as was done by the three others, took it upon himself to request to approach the bench. Mr. Roy's unwillingness to discuss the matter in front of the other prospective jurors negates the idea that he may have imparted the information to them.

The record in this case convinces us beyond any reasonable doubt that the defendant Noble was not harmed by his absence from the voir dire questioning of a prospective juror. For this reason, the decision denying further post conviction relief was correct.

> *Case remanded to the Court of Special Appeals with instructions to affirm the judgment of the Criminal Court of Baltimore.*
>
> *Appellant Noble to pay the costs.*

*Cole, J., dissenting:*

I disagree with the Court's holding today. The majority makes an egregious error in overruling *State v. Saul,* 258 Md. 100, 265 A.2d 178 (1970), and disapproving *Young v. State,* 5 Md. App. 383, 247 A.2d 751 (1968). As the majority correctly notes, "[t]hose opinions limit the harmless error doctrine to events which were not regarded as stages of the trial and hold that prejudice was conclusively presumed if the defendant was absent from a stage of the trial." The majority's effort to distinguish *Saul* and *Young* from other

right to be present cases is, in my judgment, fallacious. If, indeed, the right to be present is a defendant's absolute, constitutional right, the majority's application of the *Dorsey* (harmless error) test thoroughly eviscerates that right. Moreover, the majority misapplies *Dorsey.* No longer is the reviewing court called upon to declare a belief beyond a reasonable doubt that the error did not influence the verdict; it may now overcome such doubt based on no more than the court's bald speculation as to what the defendant may or may not have done had he been present. It seems to me that the Court's opinion today makes meaningless what we said in *Bunch v. State,* 281 Md. 680, 688, 381 A.2d 1142 (1978), quoting approvingly from *People v. Medcoff,* 344 Mich. 108, 73 N.W.2d 537 (1955), that

> *We recognize that all that transpired between judge and jurors as well as the court's conclusion that there had been no misconduct is in the record before us. Therefore, it is argued that defendants have shown no prejudice. However, the abrogation of defendants' right to be present is not determined from the result and review thereof of the court's inquiry but rather from the mere fact that during the inquiry defendants were not given an opportunity to exercise those privileges which their right to be present affords them.* [*Emphasis supplied.*]

The net effect of the holding in the case *sub judice* and in other recent decisions of the Court dealing with the right to be present at every stage of the trial is to require the defendant, at the risk of being obstreperous, to personally assert his right to be present whenever there is any chance encounter at the bench between the trial judge and the lawyers, in order to overcome his ignorance and assure himself that what the judge and counsel do does not inure to his detriment. This is a giant step backward. I, therefore, dissent.

Judge Davidson authorizes me to state that she concurs in the views expressed herein.