PEOPLE v MORGAN

PEOPLE v CARGILE

Docket Nos. 55554, 55555. Argued February 2, 1977 (Calendar No. 15).
—Decided July 18, 1977. Certiorari denied by the Supreme
Court of the United States November 28, 1977.

Thomas F. Morgan and William L. Cargile were convicted by a
jury in Recorder's Court of Detroit, Maurice L. van Benschoten,
J., of kidnapping and felonious assault. During their trial,
defense counsel made a motion for a mistrial claiming that a
newspaper article just published in a local paper and a televi-
sion newsfilm recently broadcast on two local stations con-
tained information that could prejudice the jurors. The trial
court conducted a voir dire of the jurors in chambers in the
presence of and with the assistance of counsel for the prosecu-
tion and the defense, but outside the presence of the defend-
ants. Subsequently, the motion for mistrial was denied. The
Court of Appeals, R. B. Burns, P. J., and V. J. Brennan and Van
Valkenburg, JJ., remanded for an evidentiary hearing at which
the trial court found that the defendants had not waived their
right to be present at the voir dire (Docket Nos. 13567, 13568,
13675, 13676). Pursuant to instructions from the Court of
Appeals, the trial court granted a new trial. The people appeal.
*Held:* ·

1. The Supreme Court of the United States has recognized
that even violations of constitutional rights can amount to
harmless error in the circumstances of a particular case. Auto-
matic reversal is not the rule in cases involving a defendant's
absence from a part of a trial.

2. The proper test for determining whether a defendant's
absence from a part of a trial requires reversal of his conviction
is whether there is any reasonable possibility of prejudice.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 776 *et seq.*
[2–6] 21 Am Jur 2d, Criminal Law § 277.
[4–6] 21 Am Jur 2d, Criminal Law §§ 289, 294, 299.
[7] 21 Am Jur 2d, Criminal Law § 271 *et seq.*
[8] 21 Am Jur 2d, Criminal Law §§ 273, 279.

3. The record in this case shows there is no reasonable possibility that the defendants were prejudiced by their absence from the questioning of the jurors. The defendants were not excluded from the questioning of the jurors. After the format for the questioning was discussed in their presence, they simply remained in the courtroom without objecting or asking to be present, when the judge and the attorneys retired to the judge's chambers. The format for the questioning was exemplary; the questioning did not concern possible misconduct by the jurors but whether they had seen the newspaper article or the television film, and the record shows that none of the jurors had seen the article and that the two jurors who knew something about the film knew it was not about the defendants' case and were not prejudiced by it.

The decision of the Court of Appeals is reversed and the convictions reinstated.

Justice Williams, joined by Justice Blair Moody, Jr., concurred in the result but expressed his belief that *People v Medcoff,* 344 Mich 108; 73 NW2d 537 (1955), is correct on its facts. The judge would have been in error if he had refused a timely request to permit the defendants to be present at the interrogation of the jurors, because their rights might have been affected at an evidentiary proceeding and their presence could in no way have intimidated a juror as it might in discussing a threat to the juror by a partisan of the defendants. In the instant case the defendants did not move to accompany their counsel nor object before or after the meeting, and the character of the interrogation by the judge in the presence of all counsel was actually non-prejudicial.

Chief Justice Kavanagh, dissenting, would affirm the judgment of the Court of Appeals and order a new trial because he is still persuaded that *People v Medcoff,* 344 Mich 108; 73 NW2d 537 (1955), is the better rule. The defendant has the right to be present during the conduct of the prosecution to give advice or suggestion or even to supersede his lawyers and conduct the trial himself. The right to be present may be waived but a waiver will not be presumed from a silent record. A defendant deprived of his constitutional right to be present at all stages of his trial is not required to prove prejudice to obtain a reversal of his conviction.

50 Mich App 288; 213 NW2d 276 (1973) reversed.

*People v Medcoff,* 344 Mich 108; 73 NW2d 537 (1955), overruled in part.

OPINION OF THE COURT

1. CRIMINAL LAW—HARMLESS ERROR.

The Supreme Court of the United States has recognized that even violations of constitutional rights can amount to harmless error in the circumstances of a particular case.

2. CRIMINAL LAW—TRIAL—DEFENDANT'S PRESENCE.

Automatic reversal is not the rule in cases involving a defendant's absence from a part of a criminal trial.

3. CRIMINAL LAW—TRIAL—DEFENDANT'S PRESENCE.

The proper test for determining whether a defendant's absence from a part of a criminal trial requires reversal of his or her conviction is whether there is any reasonable possibility of prejudice.

4. CRIMINAL LAW—TRIAL—DEFENDANT'S PRESENCE—QUESTIONING OF JURORS.

There was no reasonable possibility that the defendants were prejudiced by their absence from the questioning of jurors in chambers concerning possible prejudice resulting from publicity during the trial, where the defendants were not affirmatively excluded from the questioning, the procedure for the questioning was exemplary, the questioning did not concern possible misconduct by the jurors but whether they had seen the publicity, and the record showed that none of the jurors had been prejudiced by the publicity.

OPINION CONCURRING IN RESULT

WILLIAMS and BLAIR MOODY, JR., JJ.

5. CRIMINAL LAW—TRIAL—DEFENDANT'S PRESENCE—QUESTIONING OF JURORS.

*Refusing a timely request to permit a defendant to be present at interrogation of jurors concerning possible prejudice resulting from publicity during trial would be error, because the defendant's rights might have been affected at an evidentiary proceeding and his presence could in no way have intimidated a juror as it might in discussing a threat to a juror by a partisan of the defendant.*

6. CRIMINAL LAW—TRIAL—DEFENDANT'S PRESENCE—QUESTIONING OF JURORS.

*The absence of defendants from questioning in chambers of jurors concerning possible prejudice resulting from publicity during trial was not a ground for reversal where the defendants were present in the courtroom and did not move to accompany their*

*counsel nor object before or after the meeting, and the charac-
ter of the interrogation by the judge in the presence of all
counsel was actually non-prejudicial.*

DISSENTING OPINION

KAVANAGH, C. J.

7. CRIMINAL LAW—CONSTITUTIONAL LAW—PRESENCE OF ACCUSED.

*The Sixth and Fourteenth Amendments confer on the accused
the right to be present during the conduct of the prosecution;
he has the right to give advice or suggestion or even to
supersede his lawyers and conduct the trial himself (US Const,
Am VI, XIV).*

8. CRIMINAL LAW—CONSTITUTIONAL LAW—PRESENCE OF ACCUSED—
WAIVER.

*A valid waiver of the right of the accused to be present at all
stages of the proceedings requires an intentional relinquish-
ment or abandonment of a known right or privilege; waiver
will not be presumed from a silent record and a defendant
deprived of this right is not required to prove prejudice.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward Reilly Wilson,* Re-
search, Training & Appeals, and *Don W. Atkins,*
Assistant Prosecuting Attorney, for the people.

*Charles Campbell* and *Raymond A. MacDonald*
for defendants.

COLEMAN, J. The defendants had a jury trial and
were convicted of two kidnappings and two feloni-
ous assaults. During the trial, the judge and the
attorneys questioned the jurors in the judge's
chambers to determine whether the jurors had
seen certain media publicity and, if so, whether it
would affect their judgment. The defendants re-
mained in the courtroom while the jurors were

questioned in chambers. The Court of Appeals said this entitled the defendants to a new trial.[1]

We disagree. The record in this case demonstrates there is no reasonable possibility that these defendants were prejudiced by their absence during the questioning of the jurors. The Court of Appeals is reversed and the defendants' convictions are reinstated.

I

The evidence at trial established that Edward Love and Curtis Atkinson were blindfolded and kidnapped by Edmond Monroe, a former codefendant in this case.[2] Monroe took Love and Atkinson to an apartment where defendants Morgan and Cargile were waiting. Love and Atkinson were beaten, forced to undress and locked in a small closet. When they were let out of the closet, Curtis Young was present in the apartment. His head was bruised and bleeding. The defendants forced Love, Atkinson and Young to lie on the floor in a pile, naked. Then the defendants doused the victims with lighter fluid and set them on fire. When the fire died out, all three victims were locked in the closet. The next morning when they were let out of the closet, Curtis Young jumped out a second story window trying to escape. Gunshots were fired. Later, he was found dead. Love and Atkinson were then driven to areas near their homes and released.

The defendants were arrested and charged with murder, kidnapping and felonious assault. The first attempt to bring them to trial was aborted by

---

[1] *People v Morgan* 50 Mich App 288; 213 NW2d 276 (1973).

[2] Monroe was killed in a "homicidal death" while this appeal was pending.

a mistrial. Less than two weeks later, they were brought to trial again.[3]

On the fourth day of the second trial, the jury was excused and, with the defendants present, the defense moved for a mistrial claiming that a newspaper article about the case published in a local paper the day before contained information that might prejudice the jury against the defendants. The defense was also worried about a television news feature dealing with another case that had appeared on two local television stations the day before. The subject of the film was witness intimidation. This troubled the defense because one of the prosecution witnesses who testified against the defendants at the preliminary examination changed her testimony at trial.[4]

The prosecutor suggested, and the judge and defense attorneys agreed, that the jurors should be questioned about the article and the film. The judge proposed that the jurors be taken to the jury room and then be summoned one by one to the judge's chambers for individual questioning. After being questioned, the jurors would be taken to the jury box in the courtroom so that they would not be able to communicate with the other jurors. This proposal was agreeable to the attorneys. The defendants did not object to this proposal or ask to be present during the questioning. They simply remained in the courtroom when the judge and all of the attorneys went to the judge's chambers.

---

[3] Time was of the essence to the prosecution because of witness attrition. One prosecution witness was shot and killed on the way to the preliminary examination. Another testified at the examination, but disappeared before the case could be brought to trial. A third prosecution witness testified against the defendants at the examination but changed her testimony at trial. She disappeared after the trial. A fourth witness was killed after the trial.

[4] The jurors were not aware of the other instances of witness attrition discussed above in footnote 3.

The proceedings in the judge's chambers were stenographically recorded. The transcript, which is almost 40 pages long, shows that the judge explained the purpose of the questioning to the jurors and asked them if they had read any newspaper articles about the case. He also asked what the jurors had been watching on television and whether any newspaper articles or television films had been discussed in the jury room. The attorneys were permitted to ask additional questions if they wished. The judge told the jurors to disregard media publicity, reminded them about their oath to decide the case solely on the basis of the evidence presented in court and cautioned them not to discuss the case until deliberations began.

The questioning revealed that none of the 14 jurors knew anything about the newspaper article. Two jurors did, however, know something about the television film. One of these jurors said she did not see the film, but did hear parts of the audio transmission. She said she heard "about something down here at Recorder's Court * * * about a witness getting their house burned". She was aware the film was not about the defendants' case. The other juror said she saw the film while dressing to come to court. She said she heard "something to the effect that was getting to jurors, or something, and witnesses, and that one witness's house had been burned". She too was aware that the film was not about the defendants' case. When asked whether she thought the things depicted in the film were happening in the defendants' case, she said "no".

These two jurors were asked whether the film would affect their judgment in any way. Both of them unequivocally said it would not. The defense attorneys indicated they were satisfied that these

two jurors had not been prejudiced and could remain in the case.

When all of the jurors had been questioned, the judge and the attorneys returned to the court-room. The judge denied the mistrial motion, and the trial resumed without comment from either of the defendants. Eventually, the two jurors who knew something about the television film partici-pated in the verdict.

When the defendants appealed their convictions to the Court of Appeals, they objected to their absence during the questioning of the jurors. The Court of Appeals remanded the case to the trial court for an evidentiary hearing to determine whether the defendants had waived their right to be present. The Court of Appeals instructed the trial court to grant the defendants a new trial if they had not waived that right. The trial court found that there had been no waiver, and awarded the defendants a new trial. The prosecution ap-pealed.

II

The Court of Appeals based its decision in this case on *People v Medcoff,* 344 Mich 108; 73 NW2d 537 (1955). The defendants in *Medcoff* had a jury trial and were convicted of violating local gam-bling laws. During the trial, the judge excluded the defendants, all of the attorneys and everyone else except a court reporter and the jurors from the courtroom and then questioned the jurors about possible misconduct. He failed, however, to question the jurors about the possibility that they had been prejudiced by matters outside the record, although defense counsel had earlier requested that he do so.

On appeal, this Court did not consider whether and to what extent the defendants had actually been prejudiced by their absence during the questioning. Instead, the Court said that once absence is established, "[i]njury is conclusively presumed".[5]

Although we believe the *Medcoff* result was correct on its facts, it is no longer the law that injury is conclusively presumed from defendant's every absence during the course of a trial. No less an authority than the United States Supreme Court has recognized that even violations of constitutional rights can amount to harmless error in the circumstances of a particular case,[6] and in cases involving a defendant's absence from a part of a trial, that Court has indicated that automatic reversal is not the rule.[7] Similarly, the recent cases from the Federal Courts of Appeal have rejected a rule of automatic reversal in cases involving a defendant's absence from trial.[8]

In our most recent case dealing with this area of criminal procedure, *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976), we affirmed the defendants' conviction despite their absence during the questioning of jurors similar to that in the case at bar. Implicitly, at least, the three justices who signed the majority opinion in *Carroll* and the two justices who concurred in the result rejected the principle that once absence is established "injury is conclusively presumed".

[5] *Id,* 117–118.

[6] *See Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967).

[7] *See Illinois v Allen,* 397 US 337; 90 S Ct 1057; 25 L Ed 2d 353 (1970).

[8] *See Jones v United States,* 299 F2d 661 (CA 10, 1962), *cert den* 371 US 864; 83 S Ct 123; 9 L Ed 2d 101 (1962); *Rice v United States,* 356 F2d 709 (CA 8, 1966); *Ware v United States,* 376 F2d 717 (CA 7, 1967); *Wade v United States,* 142 US App DC 356; 441 F2d 1046 (1971); *Bustamante v Eyman,* 456 F2d 269 (CA 9, 1972); *United States v Toliver,* 541 F2d 958 (CA 2, 1976).

Today, we explicitly reject that principle. In its place we adopt the following language from *Wade v United States,* 142 US App DC 356, 360; 441 F2d 1046, 1050 (1971), as the proper test for determining whether a defendant's absence from a part of a trial requires reversal of his or her conviction:

"It is possible that defendant's absence made no difference in the result reached. The standard by which to determine whether reversible error occurred [is] * * * whether there is 'any reasonable possibility of prejudice'."

### III

In the case at bar, we believe the record shows there is no reasonable possibility that the defendants were prejudiced by their absence during the questioning of the jurors.

They were not excluded from the questioning of the jurors. After the format for the questioning was discussed in their presence, they simply remained in the courtroom without objecting or asking to be present when the judge and attorneys retired to the judge's chambers.

The format for the questioning was exemplary. The jurors were questioned individually and were not permitted to communicate with the other jurors until after they all had been questioned. The judge explained the purpose of the questioning and carefully questioned each juror about the newspaper article and the television film before the next juror was questioned. All of the attorneys were present and they were permitted to ask any additional questions they wished. The judge cautioned the jurors to disregard media publicity, reminded them of their oath and told them not to discuss

the case until deliberations began. All of this was stenographically recorded.

In this case, as in *People v Carroll,* in contrast with *People v Medcoff,* the questioning of the jurors did not concern possible misconduct on their part. The factual issue here was uncomplicated and straightforward: Had the jurors seen the newspaper article or the TV program; of the two who had some knowledge of the TV program, did they think what they saw or heard concerned this case?

The record shows that none of the jurors had been prejudiced by either the article or the film. None of them knew anything about the article. The two jurors who knew something about the film did not know much about it, but they did know it was about an entirely different case. There is no indication that either of them connected the defendants with the things depicted in the film. One of the jurors even said she did not think witnesses were being intimidated in the defendants' case.

Most importantly, both of these jurors unequivocally stated that the film would not influence their judgment in any way. The defense attorneys indicated they were satisfied that these jurors had not been prejudiced and could continue to sit as jurors in the case.

In short, we believe the defendants' absence "made no difference in the result reached". *Wade, supra.* For this reason, we reverse the Court of Appeals and reinstate the defendants' conviction.

LEVIN, FITZGERALD, and RYAN, JJ., concurred with COLEMAN, J.

WILLIAMS, J. I concur in the result. However, I

believe *Medcoff*[1] is correct on its facts. While
*Carroll*[2] reaches a different result .from *Medcoff,*
*Carroll* cannot be said to change the precedent of
*Medcoff,* because there was no majority opinion in
*Carroll*[3] and it is therefore precedent only as to its
facts, which are distinguishable from *Medcoff.*

In my opinion, the judge would have been in
error if he had refused a request to permit the
defendants to be present at the juror interroga-
tion, because their rights might have been affected
at an evidentiary proceeding and their presence
could have in no way intimidated a juror as in
discussing a threat to the juror by a partisan of
the defendants.

However, in the instant case it would appear
that the defendants were sitting with their counsel
in court when the judge issued his invitation to
the attorneys to join him in chambers for the
interrogations. The defendants didn't move to ac-
company their counsel nor object before or after
the meeting. Their counsel did not act to bring
them into chambers nor object after the meeting.

It is the non-assertion of the right by defendants
and their counsel and the fact that there was no
specific denial of that right by the judge, combined
with the actual non-prejudicial character of the
interrogation by the judge in the presence of all
counsel that inclines me to agree with the major-
ity result. It is my opinion, however, if asserted
timely, the defendants had the right to be present
at the interrogation.

BLAIR MOODY, JR., J., concurred with WILLIAMS,
J.

---

[1] *People v Medcoff,* 344 Mich 108; 73 NW2d 537 (1955).

[2] *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976).

[3] In *Carroll* one opinion had three signatures, and there were two
concurring and one dissenting opinions each with one signature. One
justice took no part in the decision. The two concurring and one
dissenting opinion each relied on *Medcoff* in some degree.

KAVANAGH, C. J. *(dissenting)*. For the first time since the unanimous vote of this Court established the rule of law in *People v Medcoff,* 344 Mich 108; 73 NW2d 537 (1955), it appears that there are four votes to change it.

I am still persuaded that *Medcoff* is the better rule for the reasons I listed in *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976).

Accordingly I would affirm the Court of Appeals and the trial court and order a new trial.