# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

FLOYD ELLIOTT KOHN,

        Defendant-Appellant.

UNPUBLISHED
February 19, 2015

No. 317919
Kalamazoo Circuit Court
LC No. 2012-000109-FH

---

Before: BECKERING, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of operating or maintaining a methamphetamine laboratory, MCL 333.7401c(2)(f), but acquitted him of unlawfully using a motor vehicle, MCL 750.414. Defendant's conviction stems from the discovery of a "one-pot meth lab" made from a two-liter bottle under the passenger seat in which defendant sat at the time of an investigatory vehicle stop. Defendant raises several challenges on appeal, none of which merit relief. We therefore affirm.

## I. BACKGROUND

On the evening of September 24, 2011, Kalamazoo police officers pulled over a pickup truck because its owner had reported it stolen. Defendant was sitting in the passenger seat. After removing the occupants from the vehicle, the officers conducted a vehicle search. Under the passenger seat, they discovered a two-liter plastic bottle containing a suspicious liquid. The officers believed the bottle contained methamphetamine that was in the process of being "cooked." Such bottles build up intense pressure and need to be carefully ventilated. The officers therefore requested the assistance of specially trained officers to handle the substance. After securing the bottle, a sample was taken. Later testing revealed the presence of methamphetamine.

All three passengers of the pickup truck were taken into custody at the scene. At the police station, defendant sat in the booking area next to fellow arrestee, Thomas Peffley. An officer noted that Peffley, defendant's then-boyfriend, was whispering to defendant. Defendant then rose and approached an officer. He stated his desire to go on "the record now." The officer informed defendant that video surveillance was activated in the room and could record any statements. Defendant then indicated, "I just want to go on record and tell you that it's mine." The officer asked for clarification and defendant asserted, "The lab, everything it's mine."

-1-

## II. OPINION TESTIMONY

Defendant contends that the prosecutor improperly elicited, and witnesses Officer Bryan Martin and Officer David Miller improperly expressed, opinions regarding his guilt. Defendant failed to preserve these challenges through timely objections. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Our review is therefore limited to plain error affecting defendant's substantial rights. *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011); *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003).

The issue of a defendant's guilt or innocence is a question for the jury to resolve. *People v Suchy*, 143 Mich App 136, 149; 371 NW2d 502 (1985). Thus, a witness may not express an opinion on the defendant's guilt or innocence of the charged crime. *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012).

Here, Officer Martin testified that defendant came to the counter in the booking area and told him that the meth lab found in the pickup truck belonged to him. Martin explained that the police suspected that the meth lab belonged to defendant because it had been found under defendant's seat. Martin further described that defendant's earlier invocation of his *Miranda*[1] rights and refusal to speak about the meth lab "cemented" in the officer's mind that defendant was the individual in possession of the contraband. Martin testified that defendant's police station statement surprised him, and he wondered why a person, if innocent, would admit to such a grave crime. This testimony was clearly inadmissible because it constituted an opinion on defendant's guilt. Contrary to the prosecution's contentions, this evidence did not explain any steps in the investigation. Cf *Heft*, 299 Mich App at 81-83.

Additionally, Officer Martin's comment regarding defendant's initial post-*Miranda* silence was plainly erroneous. Every person subject to interrogation while in police custody must be given *Miranda* warnings. *People v Shafier*, 483 Mich 205, 212; 768 NW2d 305 (2009). If a person remains silent after hearing the warnings, his silence may not be used as evidence against him. *Id.* Martin testified that he suspected that the meth lab belonged to defendant because defendant refused to talk about it after *Miranda* warnings were given. This was an improper use of defendant's post-*Miranda* silence as evidence against him.

However, Officer Martin's improper testimony did not affect defendant's substantial rights. Although defendant initially remained silent about the meth lab after receiving *Miranda* warnings, he subsequently broke his silence. In the booking area, defendant made a clear, unambiguous, and unsolicited statement to the officer that the meth lab belonged to him. The statement was corroborated by the fact that the contraband was found under the seat where defendant had been sitting. A reasonable jury could readily conclude that a defendant would not admit to a crime he did not commit, particularly under the circumstances presented here. Accordingly, Officer Martin's improper testimony did not affect the outcome of defendant's trial. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Officer Miller's testimony was not improper, however. Officer Miller indicated that he did not search for fingerprint evidence on the bottle. When asked for an explanation of this decision on redirect examination, Miller testified, in part, that the "suspects were caught red-handed" and that a meth lab is "almost always" the object of a conspiracy. A witness should be permitted to explain on redirect examination an answer given on cross-examination. *People v Babcock*, 301 Mich 518, 529; 3 NW2d 865 (1942). A "[d]efendant cannot complain of admission of testimony which defendant invited or instigated." *People v Whetstone*, 119 Mich App 546, 554; 326 NW2d 552 (1982). Accordingly, defendant cannot complain of the alleged improper testimony that Miller gave on redirect examination. Even if Miller opined on defendant's guilt, the testimony was not plainly erroneous.

We further reject defendant's contention that the prosecutor engaged in misconduct in her questioning of these officers. Prosecutorial misconduct cannot be predicated on a good-faith effort to admit evidence. *People v Abraham*, 256 Mich App 265, 278; 662 NW2d 836 (2003). A prosecutor is entitled to attempt to introduce evidence that she legitimately believes will be accepted by the trial court. *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999). Officer Martin's challenged responses were given in response to the following questions: "So does this investigation take a new turn?" and "I mean were you surprised at the statement that he gave you?" Nothing in these questions suggests that the prosecutor was seeking an opinion regarding defendant's guilt or a commentary on defendant's post-*Miranda* silence. And, as noted, the prosecutor's questions to Officer Miller were a proper response to questions posed during cross-examination. Accordingly, we discern no grounds for relief.

Defendant also claims that defense counsel was ineffective for failing to object to the testimony of Officers Martin and Miller. Our review is limited to mistakes apparent on the record as defendant failed to seek a new trial or an evidentiary hearing on this issue. See *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). To establish an ineffective assistance claim, a defendant must show that counsel's performance fell below objective standards of reasonableness and that but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *People v Uphaus (On Remand)*, 278 Mich App 174, 185; 748 NW2d 899 (2008).

Regarding Officer Martin's testimony, defendant has failed to overcome the strong presumption that defense counsel's decision not to object was sound trial strategy. *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008). As previously noted, the prosecutor's questions seemed innocuous, although Officer Martin provided improper testimony in reply. Defense counsel may have chosen not to emphasize the information in Officer Martin's responses by foregoing an objection. See *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995) ("Certainly there are times when it is better not to object and draw attention to an improper comment."). Moreover, relief is not warranted as counsel's decision to withhold objection did not likely alter the result of defendant's trial. In relation to Officer Miller's testimony, any objection would have been futile as the witness merely provided an explanation of his cross-examination testimony elicited by defendant. Accordingly, counsel's performance cannot be considered deficient. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

## II. APPOINTMENT OF REPLACEMENT COUNSEL

Three months before trial, defense counsel moved to withdraw as defendant's appointed counsel, at defendant's request, because she was campaigning for election in neighboring Barry County to serve as county prosecutor. Defendant challenges the trial court's denial of this request, claiming that defense counsel's bid for a prosecutorial position created a conflict of interest. We review a trial court's decision regarding the substitution of counsel for an abuse of discretion. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Id.*

A defendant has a constitutional right to counsel. *People v Meissner*, 294 Mich App 438, 459; 812 NW2d 37 (2011). However, an indigent defendant is not entitled to the appointment of counsel of his choosing. *Strickland*, 293 Mich App at 397. "Appointment of substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." *Id.* (quotation omitted). A defendant's right to counsel includes the right to effective assistance of counsel. *Meissner*, 294 Mich App at 459. A defendant is denied effective assistance if counsel had an actual conflict of interest that affected counsel's performance. *People v Smith*, 456 Mich 543, 556; 581 NW2d 654 (1998).

In support of his claim, defendant relies on *People v Davenport*, 483 Mich 906; 762 NW2d 163 (2008), where the Supreme Court stated:

> A presumption of prejudice exists when a defendant's former defense counsel joins the prosecutor's office that is pursuing the case against the defendant. MRPC 1.9(b), 1.10(b). Such a presumption may be overcome, however, if the prosecutor shows that the attorney who has a conflict of interest was properly screened out from "any participation in the matter." MRPC 1.10(b). . . . [*Id.*]

*Davenport* is distinguishable from the present case. Defense counsel never switched sides. She represented defendant throughout the course of the lower court proceedings. In addition, during her representation of defendant, defense counsel was not associated with the Barry County prosecutor's office. She was only running for election. Accordingly, defendant's reliance on *Davenport* is misplaced, and he fails to establish an actual conflict of interest. The trial court therefore acted within its discretion in denying defendant's motion.

### III. EVIDENCE OF PRIOR ARRESTS

Defendant also challenges as improper the prosecutor's decision to question him on the stand regarding his prior arrests. Defense counsel objected to the prosecutor's questions below, but on different grounds. As such, defendant's appellate claims are not actually preserved, *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993), and our review is again limited to plain error affecting defendant's substantial rights. *Ackerman*, 257 Mich App at 448.

Generally, a witness may not be impeached with evidence of past arrests. *People v Falkner*, 389 Mich 682, 695; 209 NW2d 193 (1973).[2] In *People v Layher*, 464 Mich 756, 768; 631 NW2d 281 (2001), the Supreme Court limited the *Falkner* holding and held that "evidence of bias arising from past arrest without conviction is admissible if relevant, as long as its probative value is not substantially outweighed by the danger of unfair prejudice." The *Layher* rule is not applicable to the present case. Evidence of defendant's prior arrests was not offered to show any bias by defendant.

Nonetheless, by asking defendant about his prior arrests, the prosecutor did not engage in conduct amounting to plain error. Prosecutorial misconduct cannot be predicated on a good-faith effort to admit evidence. *Abraham*, 256 Mich App at 278. A prosecutor may attempt to introduce evidence that she legitimately believes will be accepted by the trial court. *Noble*, 238 Mich App at 660-661. In connection with testimony about his booking-area confession, defendant became flustered and exclaimed, "I'm sorry. This is my first time." Based on this testimony, the prosecutor could have held a legitimate belief that defendant was claiming this was his first arrest, and that by making a false claim he opened the door to challenge. *People v Gibson*, 71 Mich App 543, 547; 248 NW2d 613 (1976). Because the prosecutor was eliciting further explanation of defendant's testimony on direct, it appears that the prosecutor's questions about defendant's prior arrests were asked in good faith.

Even if the prosecutor's questions were improper, the error did not affect defendant's substantial rights. After defendant admitted that he had previously been arrested for resisting arrest and shoplifting, defendant acknowledged that he had seven *convictions* for shoplifting. Defendant does not challenge the admission of that evidence. And this evidence certainly weighed more negatively on defendant's credibility.

## IV. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises several challenges in an in pro per brief filed pursuant to Admin Order 2004-6 Standard 4. Defendant argues that his due process rights were violated by the trial court and this resulted in a cumulative effect of error. By failing to support the argument with citation to any legal authority, defendant has abandoned the issue and we decline to address to it. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority."). The remainder of defendant's challenges were not preserved by objection in the trial court. Our review is therefore limited to plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763.

Defendant argues that his conviction violated the Ex Post Facto Clauses because it was obtained with "less than standard evidence." US Const, art I, § 10 and Const 1963, art 1, § 10 both prohibit ex post facto laws. *People v Callon*, 256 Mich App 312, 316-317; 662 NW2d 501

---

[2] MRE 609 does not allow a witness to be impeached with past arrests. The rule applies only to the use of past *convictions*. *People v Layher*, 464 Mich 756, 771; 631 NW2d 281 (2001).

(2003). Laws that violate the Ex Post Facto Clauses share two elements: (1) they attach legal consequences to acts done before their effective date, and (2) they work to the disadvantage of the defendant. *Id.* at 318. A law disadvantages a defendant if it allows the prosecutor to convict on less evidence. *People v Slocum*, 213 Mich App 239, 243; 539 NW2d 572 (1995). In this case, the prosecution did not attempt to retroactively apply any law to defendant's case. And defendant impliedly concedes this point by failing to cite any such attempt.

Defendant asserts that evidence regarding the discovery of the meth lab in the vehicle was inadmissible because the jury acquitted him of unlawfully driving away a vehicle, thereby establishing that the truck's owner filed a false theft report. However, we are aware of no authority supporting the proposition that a jury's verdict determines what evidence is admissible. Indeed, such a proposition is illogical as a verdict is rendered only after the jury hears the evidence. The court would therefore require tarot cards to discern the admissibility of evidence.

Defendant claims that the prosecutor committed a wide range of misconduct. He challenges the prosecutor's decision to wait until January 2012, four months after his initial arrest, to levy charges against him. A prosecutor is the chief law enforcement officer of the county, *People v Barksdale*, 219 Mich App 484, 487; 556 NW2d 521 (1996), and is constitutionally entrusted with authority to charge defendants. *People v Siebert*, 450 Mich 500, 510; 537 NW2d 891 (1995) (opinion of BOYLE, J.). A "trial court's authority over the discharge of a prosecutor's duties is limited to those activities or decisions by the prosecutor that are unconstitutional, illegal, or ultra vires." *People v Morrow*, 214 Mich App 158, 161; 542 NW2d 324 (1995). Nothing in the record supports defendant's suggestions that the prosecutor's decision to charge defendant was racially motivated or that the prosecutor decided to charge him because it was an election year. Contrary to defendant's claim, the charges were never dropped against him. Rather, Officer David Boling testified that charges were not brought against defendant until the laboratory report was received in December 2011, confirming that the substance in the bottle was meth.

Defendant argues that the prosecutor made improper remarks during closing and rebuttal arguments. We agree that the prosecutor improperly argued that Officer Martin was a credible witness because he would not lie and jeopardize his career. Although a prosecutor may argue from the facts that a witness is credible, *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997), the prosecutor's argument was not based on the facts. There was no testimony that Martin's job would be placed in jeopardy if he lied. However, the improper remarks did not affect defendant's substantial rights. The trial court instructed the jury that it was to return a verdict based on the evidence and that its job was to determine the facts of the case, which included deciding which witnesses to believe. The trial court also instructed the jury that the evidence only included the sworn testimony, admitted exhibits, and anything else it was told was evidence. It did not include the lawyers' statements and arguments. A jury is presumed to follow its instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). The prosecutor's improper remarks did not affect the outcome of defendant's trial.

Defendant's challenge to the prosecutor's remark that "perfect cases do not go to trial" similarly does not warrant relief. A prosecutor's remarks must be evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). The prosecutor's remarks acknowledged that,

because there was no video of defendant's statement to Martin or fingerprints on the meth lab, she had not presented a "perfect case." The remarks were in response to the defense theory that evidence of defendant's guilt was lacking because there was no fingerprint or video evidence.

Additionally, defendant argues that he was denied his right to be present when the trial court ordered him to undergo a competency examination. "[D]efendants have the right to be personally present at every stage of the trial where their substantial rights may be affected by the proceedings and where their presence relates to the fullness of their opportunity to defend against the charge." *People v Medcoff*, 344 Mich 108, 115; 73 NW2d 537 (1955), overruled in part by *People v Morgan*, 400 Mich 527; 255 NW2d 603 (1977). Assuming, but without deciding, that a defendant has the right to be present when a trial court hears and makes a decision on a request that a defendant undergo a competency examination, defendant is not entitled to relief. Injury is not presumed from a defendant's every absence. *Morgan*, 400 Mich at 535; *People v Buie (On Remand)*, 298 Mich App 50, 59; 825 NW2d 361 (2012). The test for whether a defendant's absence requires reversal of his conviction is whether there is any reasonable possibility that the defendant was prejudiced by his absence. *Buie (On Remand)*, 298 Mich App at 59. According to defendant, because the trial court ordered him to undergo a competency examination, and even though he was subsequently found competent to stand trial, he was not accepted by the drug court.[3] However, defendant makes no argument that, had he been present, the trial court would not have ordered him to undergo a competency examination. And, the record, which contains no information about defendant's conduct that led to the trial court's order, does not allow us to make that conclusion.

Defendant further asserts that the police engaged in inexcusable neglect or deliberate deception because they did not conduct fingerprint analysis of the one-pot meth lab. A defendant has a due process right to obtain evidence in the possession of the prosecutor if it is favorable to him and material to guilt or punishment. *People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994). However, "[f]or due process concerns, there is a crucial distinction between failing to disclose evidence that has been developed and failing to develop evidence in the first instance." *People v Anstey*, 476 Mich 436, 461; 719 NW2d 579 (2006). Police have no constitutional duty to assist a defendant in developing potentially exculpatory evidence. *Id.* Accordingly, the police were under no duty to search the bottle for fingerprints, and defendant's claim is meritless. See *People v Stephens*, 58 Mich App 701; 228 NW2d 527 (1975).

Finally, defendant argues that he is entitled to a new trial based on newly discovered evidence. He asserts that he has discovered since trial that his name is not in the national and state databases for purchases for pseudoephedrine products, a piece of evidence often relied upon in methamphetamine-related cases. A new trial may be granted on the basis of newly discovered evidence. *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). However, one requirement to support a new trial is that "the new evidence makes a different result probable on retrial."

---

[3] This assertion is not supported by the record. At the hearing on the motion to withdraw, defense counsel told the trial court that the drug court rejected defendant because of mental health reasons that gave rise to the competency examination.

*People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003).  Here, it is completely irrelevant whether defendant ever purchased any pseudoephedrine products; he was caught red-handed in the possession of a portable meth lab.

We affirm.


/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher