# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 26, 2016

Plaintiff-Appellee,

v

No. 314245
Macomb Circuit Court
LC No. 2012-001661-FH

ALVIN LEWIS RICHARDSON,

Defendant-Appellant.

Before: BECKERING, P.J., and OWENS and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right following his jury trial convictions for identity theft, MCL 445.65(1)(a)(*i*), and obtaining or possessing personal identifying information of another with the intent of committing identity theft, MCL 445.67(d). Defendant was sentenced as an habitual offender to 14 months to five years' imprisonment. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On September 10, 2011 at approximately 8:30 p.m., Detective Greg Morabito was on patrol in a fully marked patrol car at the Utica Home Depot when he noticed a white Ford Escort pull into the parking lot. The car parked a distance from the store even though it was not crowded, which Morabito found suspicious. There were three occupants in the vehicle. Morabito observed that the individuals were looking at him, causing him to become more suspicious because "that's a pretty good indication that more things are going to happen." Morabito pretended as though he was leaving the parking lot but parked where he could watch the car. Two of the occupants – the driver and the backseat passenger – got out of the vehicle. Morabito subsequently identified defendant as the driver. The individuals went into the store and Morabito approached the vehicle. The third individual was shuffling his legs around and Morabito could see a bag under his legs that looked like it had high-end plumbing supplies, including replacement cartridges. The passenger identified himself as Anthony Garland.

As Morabito spoke with Garland, the other two individuals exited the store. When Morabito began to approach them, defendant returned inside the store. The other individual, later identified as "Simmons," walked past as if they were not together. Morabito confronted defendant in the lobby and asked him to step outside. Defendant provided his name and told Morabito that he had absconded from parole. At that point, Morabito was required to arrest

-1-

defendant. Defendant was placed under arrest because of his status and because he was driving on a suspended license; he was not arrested for anything that occurred on September 10, 2011. Morabito conducted a search incident to arrest and found a driver's license belonging to Robert Hayes in defendant's wallet. Morabito indicated that he found several return receipts and some of those refunds were attributable to Simmons and Garland. Simmons had been carrying a bag out of the Home Depot. Nevertheless, Simmons and Garland were released at the scene.

Robert Hayes testified that he was a self-employed "transportation expediter" and lived in Grosse Pointe. In the early spring of 2011, Hayes noticed that his driver's license was missing. He did not carry a wallet and generally just kept his license in his pocket. After backtracking and retracing his steps failed to recover the lost license, Hayes ultimately applied for and received a replacement license. Hayes never gave anyone his license and never allowed anyone to use the license to facilitate refunds at Home Depot.

Jeremy Greenleaf's responsibility at Home Depot was to investigate organized retail crime and financial crimes. Greenleaf explained that a refund could be done at any Home Depot with or without a receipt. If an individual had the receipt, then the original form of payment was returned. If an individual did not have a receipt, then he would get store credit if he presented ID. The clerk would input the driver's license into the computer system. The individual would also have to sign for the refund, but the clerk processing the refund would not be able to see the signature. Home Depot only permitted a certain number of returns without a receipt and then the ID would be flagged as "Log Attempted," which meant that the individual seeking to make the return would not be able to do so.

In September 2011, Greenleaf was contacted by Morabito. Greenleaf investigated defendant's return history and learned that, as of September 2, 2011, defendant was no longer permitted to return merchandise without a receipt. Greenleaf had business records documenting defendant's returns from June 2011. The returns were at various Home Depots and were generally for faucet repair kits. Greenleaf located documents for a return on September 2, 2011. The driver's license presented belonged to Hayes. There was also a video that went along with the transaction that was played for the jury.

The jury found defendant guilty of identity theft and obtaining or possessing personal identifying information of another with the intent of committing identity theft. The trial court denied defendant's motion for new trial and sentenced defendant as an habitual offender to 14 months to five years' imprisonment.

This Court granted defendant's motion to remand based on defendant's claims that: (1) Morabito invaded the role of the jury when he identified defendant as the individual in a video, (2) the trial court erred in instructing the jury, (3) defendant was not present during a critical phase of trial (jury questions), and (4) the pre-sentence investigation report (PSIR) needed to be

amended because it referred to facts not found by the jury. *People v Richardson*, unpublished order of the Court of Appeals, entered September 17, 2015 (Docket No. 314245).[1]

A hearing on defendant's motion for new trial was held on October 29, 2015. At defendant's request, his appellate attorney was permitted to withdraw and defendant has been acting as his own attorney ever since.[2] The trial court denied defendant's motion for new trial on January 8, 2016.

## II. ANALYSIS

## A. IDENTIFICATION TESTIMONY

Defendant asserts that his right to a trial by jury was infringed when Morabito testified that defendant was the person in a September 2, 2011 video. We disagree.

"We review for an abuse of discretion the trial court's evidentiary rulings that have been properly preserved. An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Fomby*, 300 Mich App 46, 48; 831 NW2d 887 (2013) (internal quotation marks and citation omitted).

At trial, Morabito testified that Greenleaf provided him with videos and documents related to returns made by defendant or with Hayes' driver's license. Morabito watched a September 2, 2011 surveillance video from Home Depot showing defendant returning items utilizing Hayes' driver's license. The prosecutor asked Morabito if he could identify the person on the video and Morabito responded, "Yes, I see Mr. Richardson in the video." The video was played for the jury, not during Morabito's testimony, but during Greenleaf's testimony.

The identification testimony in this case constituted lay opinion testimony. *Fomby*, 300 Mich App at 50. MRE 701 provides: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." In *Fomby*, this Court cited federal case law that "the issue of whether the defendant in the courtroom was the person pictured in a surveillance photo was a determination properly left to the jury." *Fomby,* 300 Mich App at 52. In such a situation, there was no reason to believe that the witness who offered the identifying testimony was "more likely to identify correctly the person than is the jury." *Id.* (internal quotation marks omitted). "[W]here a jury is as capable as anyone else of reaching a conclusion on certain facts, it is error to permit a witness to give his own opinion or interpretation of the facts because it invades the province of the jury." *People v Drossart*, 99 Mich App 66, 80; 297 NW2d 863 (1980).

---

[1] This Court subsequently denied defendant's second request for remand that was raised in his Standard 4 Brief. *People v Richardson*, unpublished order of the Court of Appeals, entered December 1, 2015 (Docket No. 314245).

[2] Defendant has had seven different attorneys on appeal.

In denying defendant's motion for new trial, the trial court noted:

During [Morabito's] investigation of the subject crimes, he requested Home Depot to give him a refund history regarding defendant, as well as the surveillance video of who actually sought a refund with Hayes's identification. . . .At the trial, he identified defendant as the person in the video who was requesting the refund with Hayes's identification . . .

The Court is not convinced that Det. Morabito invaded the province of the jury. Instead, the Court opines that his testimony was rationally based on his perception of the witness. MRE 701.

We agree that Morabito's observations did not invade the province of the jury. Importantly, Morabito did not watch the video while testifying and did not identify defendant in the video for the jury. Instead, Morabito simply testified that he observed defendant in a video provided by Greenleaf that showed defendant returning items at the Home Depot with Hayes' driver's license. Morabito offered his own observation as an explanation for how he conducted his investigation.

Even if Morabito's testimony was impermissible, reversal is not warranted where the error was not outcome determinative. MCL 769.26; MCR 2.613(A); *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). Here, the evidence of defendant's guilt was overwhelming. Defendant was arrested with Hayes' driver's license in his wallet. Aside from the video, there was documentary evidence that the victim's driver's license had been used to return goods to the Home Depot on September 2, 2011.

## B. JURY INSTRUCTIONS

Defendant argues that the trial court's jury instruction regarding the fact that defendant was on parole at the time of his arrest was neither fair nor understandable. We disagree.

"[J]ury instructions that involve questions of law are also reviewed de novo." *People v Schaefer*, 473 Mich 418, 427; 703 NW2d 774 (2005). "Challenges to jury instructions are considered in their entirety to determine whether the trial court committed error requiring reversal." *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012). "Jury instructions must clearly present the case and the applicable law to the jury." *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005).

The trial court and the parties discussed the jury instructions and the following exchange took place:

THE COURT: . . .This issue of defendant's status as a parole absconder has come out at trial, although with the defendant –or at the defendant's urging, I suppose. The Court initially was going to keep it out. So I've crafted the first one to try and deal with the testimony regarding -- during the trial concerning defendant's status as a parole absconder, indicating to the jury if they believe this evidence, they can consider it only to the extent that it provides the legal basis for defendant's arrest on September 10, 2011. I believe that's why it was offered.

Then I've concluded some cautionary language that it shouldn't be considered for any other purposes, for example, they shouldn't decide that it shows the defendant is a bad person or he's likely to commit crimes. They must not convict the defendant here because he's on parole and/or is a parole absconder. All the evidence must come in beyond a reasonable doubt that the defendant committed the alleged crimes or you must find him not guilty.

MR. SKURAS [defense counsel]: That's very fair, Your Honor.

The trial court ultimately instructed the jury:

You've heard testimony during the trial concerning the defendant's status as a parole absconder. If you believe this evidence, you may only consider it to the extent it provides a legal basis for the defendant's arrest on September 10, 2011. You must not consider this evidence of any other purpose. For example, *you must decide that it shows that the defendant is a bad person* or that he is likely to commit crimes. You must not convict the defendant here because he is on parole and/or because he is a parole absconder. All the evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crimes, or you must find him not guilty.  [Emphasis added.]

At the hearing on defendant's motion for new trial, the prosecutor indicated that a corrected transcript had been filed that indicated a transcription error.  Appellate counsel had not been served with the amended transcript but acknowledged that "obviously, if it's different, if it's the instruction he said he was going to give, then I, then that issue is pretty much gone."  In denying defendant's motion for a new trial, the trial court noted that the issue "is moot inasmuch as the transcript was corrected to reflect what the Court actually stated, which meant that the Court had not misspoken, but instead had given a proper jury instruction."

C.  DEFENDANT'S ABSENCE DURING A CRITICAL STAGE OF THE PROCEEDINGS

Defendant argues that he was absent during an in-chambers discussion regarding how to handle questions from the jury and that the absence denied him of his right to be present during every critical stage of trial.  We disagree.

Whether defendant was deprived of his constitutional right to be present during a critical stage of his trial is a question of law that is reviewed de novo on appeal.  *People v Lockridge*, 498 Mich 358, 373; 870 NW2d 502 (2015).

On the third day of trial, the trial court indicated: "This morning the jury sent us two questions, which we, I met in chambers with both Counsel present to discuss."  The following exchange took place on the record:

THE COURT:  The first question says there's no timestamp.  What time was the video taken, and date?  After a discussion with Counsel I believe both Counsel agreed to the following response.  There is no direct evidence as to when the video was taken, however according to the Prosecution's theory of the case the receipt admitted into evidence as People's Exhibit Number Two is

circumstantial evidence of when the video . . .was taken. According to the Defense's theory of the case there is insufficient evidence to determine when the video was taken.

All right. Is that a correct statement of the response that was agreed to by Counsel?

MR. HARDING: Yes, Your Honor.

MR. SKURAS: Yes, Judge.

THE COURT: All right. There was a second question . . .

Who is the person as referred to in count two and subsection false pretenses number six, fifth? After meeting again with Counsel and discussing a response, the following response was sent into the jury. According to the Prosecution's theory of the case, the person referred to in paragraph six of the false pretenses instruction is Home Depot.

Is that the, was that the agreed response?

MR. HARDING: Yes, Your Honor.

MR. SKURAS: Yes, Judge.

"A criminal defendant has a statutory right to be present during his or her trial." *People v Kammeraad*, 307 Mich App 98, 116; 858 NW2d 490 (2014). MCL 768.3 provides "[n]o person indicted for a felony shall be tried unless personally present during the trial." Likewise, "an accused's right to be present at trial is impliedly guaranteed by the federal and state Confrontation Clauses, US Const, Am VI; Const 1963, art 1, § 20, [and] the Due Process Clauses, US Const, Am XIV; Const 1963, art 1, § 17." *Kammeraad*, 307 Mich App at 116-117 (internal quotation marks omitted). "A defendant has a right to be present during the voir dire, selection of and subsequent challenges to the jury, presentation of evidence, summation of counsel, instructions to the jury, rendition of the verdict, imposition of sentence, and any other stage of trial where the defendant's substantial rights might be adversely affected." *People v Mallory*, 421 Mich 229, 247; 365 NW2d 673 (1984). However, a defendant's absence even at a critical stage of the proceeding does not mandate automatic reversal unless the defendant can establish "whether there is any reasonable possibility of prejudice" to merit relief. *People v Morgan*, 400 Mich 527, 536; 255 NW2d 603 (1977) (internal quotation marks omitted).

At the hearing on defendant's motion for new trial, the trial court noted that off-record discussions that were later placed on the record was standard and that defendant never voiced an objection. We agree. Although the conference regarding how to answer the questions may have been held in chambers and without defendant present, the entire matter was placed on the record and any objection was conspicuously absent. Moreover, defendant does not claim that the instructions, as given, were erroneous.

## D. DEFENDANT'S PSIR

Defendant argues that his PSIR has to be corrected because the agent's description contains information not included at trial. We disagree.

"This Court reviews a trial court's response to a defendant's challenge to the accuracy of a PSIR for an abuse of discretion. A trial court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes." *People v Uphaus*, 278 Mich App 174, 181; 748 NW2d 899 (2008) (internal citation omitted).

The "Agent's Description of the Offense" in the Presentence Investigation Report is as follows:

> According to a Utica Police Report, on or about 09/10/11, the defendant, Alvin Lewis Richardson, along with Anthony Glenn Garland went to the Lowes Store located at 13 Mile Road and Van Dyke in Warren. They then selected plumbing items and went to the self[-]check out where co-defendant Garland purchased a $0.88 screw and the defendant bagged up multiple pluming [sic] items which totaled $204.73. Both of them left the store without paying for the additional plumbing items. As they left the store, sensor alarms went off and neither the defendant nor co-defendant stopped to return the items. The defendant and Mr. Garland were later seen at the Home Depot in Utica attempting to refund the items without a receipt. They were stopped and taken into custody without incident.

While a defendant is entitled to be sentenced in reliance on accurate information, *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006), a PSIR "may include information about a defendant that was not admissible nor admitted at defendant's trial or plea including hearsay, character evidence, prior convictions or alleged criminal activity for which defendant was not charged or convicted, and the victims' version of the offense." *People v Fleming*, 428 Mich 408, 418; 410 NW2d 266 (1987).

Additionally, although a defendant may object to "any information in the presentence report on the basis of accuracy and relevancy," *id.*, the sentencing transcript reveals that both defendant and his attorney reviewed the PSIR, and, although defendant objected to scoring of certain offense variables, neither defendant nor his attorney challenged description of the offense. As such, defendant appears to have waived any other challenges to the report. Defendant's failure to raise the issue, coupled with the fact that a PSIR may contain information regarding uncharged offenses, supports the trial court's decision not to allow a correction.

### E. DEFENDANT'S STANDARD 4 BRIEF

We have reviewed defendant's Standard 4 Brief, in which he raises a significant number of issues on appeal. Many of these issues are not properly briefed or completely lacking in merit. Defendant's claims that he was not advised of his *Miranda*[3] rights, was not fingerprinted,

---

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

was not provided discovery, was not timely arrested, was denied the "right" to a bench trial, was improperly shackled during trial, and nepotism do not warrant any discussion. "The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it." *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) (internal citations omitted). "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Thompson v Thompson*, 261 Mich App 353, 356; 683 NW2d 250 (2004). We briefly address only two of the issues raised – ineffective assistance of district court and trial court counsel as well as a violation of his right to a speedy trial.

## 1. EFFECTIVE ASSISTANCE OF COUNSEL

Because there was no *Ginther*[4] hearing, our review is limited to "mistakes apparent from the record." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

> A criminal defendant has the fundamental right to effective assistance of counsel. However, it is the defendant's burden to prove that counsel did not provide effective assistance. To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant. The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. [*Id.* (internal footnotes omitted).]

"A defense attorney must enjoy great discretion in the trying of a case – especially with regard to trial strategy and tactics." *People v Pickens*, 446 Mich 298, 330; 521 NW2d 797 (1994). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212(2008).

Defendant complains that district court counsel was ineffective for allowing the district court to dismiss a complaint. It is clear from the record that the district court allowed an amended complaint to be substituted for the original complaint. A court may amend an information at any time before, during or after trial. *People v Goecke*, 457 Mich 442, 460; 579 NW2d 868 (1998). Counsel's failure to raise a meritless objection cannot result in the ineffective assistance of counsel. *People v Putman*, 309 Mich App 240; 870 NW2d 593 (2015).

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defendant also argues that both district court counsel and trial court counsel should have sought an evidentiary hearing to pursue whether Morabito had probable cause to stop defendant in the first place. "The Fourth Amendment of the United States Constitution and article 1, § 11 of the Michigan Constitution protect against *unreasonable* searches and seizures. Generally, searches or seizures conducted without a warrant are presumptively unreasonable and, therefore, unconstitutional. This does not mean that all searches and seizures conducted without a warrant are forbidden; only those that are unreasonable." *People v Barbarich*, 291 Mich App 468, 472; 807 NW2d 56 (2011) (internal footnote and citation omitted). Included in the category of permissible warrantless searches is an investigative stop, or *Terry*[5] stop.

> Under this doctrine, if a police officer has a reasonable, articulable suspicion to believe a person has committed or is committing a crime given the totality of the circumstances, the officer may briefly stop that person for further investigation. Moreover, under *Terry*, a police officer may approach and temporarily detain a person for the purpose of investigating possible criminal behavior even if probable cause does not exist to arrest the person. The scope of any search or seizure must be limited to that which is necessary to quickly confirm or dispel the officer's suspicion. [*Barbarich*, 291 Mich App at 473.]

A court must look at the totality of the circumstances to determine whether the officer acted reasonably. *Id*. at 474.

Morabito testified that he became suspicious when a car pulled into the Home Depot parking lot and parked far from the entrance to the store, even though the parking lot was not crowded. Morabito noted that the three occupants were preoccupied with Morabito and turned around to look at him several times. After he parked his car out of sight, Morabito noticed that two of the three occupants exited the car to go into the store. In his experience, this was suspicious of criminal behavior. Morabito then approached the lone occupant and noticed that the occupant was trying to hide a bag of plumbing supplies. Defendant and the other passenger exited the store. When defendant saw Morabito, he immediately went back into the store. Under the totality of the circumstances, Morabito reasonably believed that criminal activity was afoot and was justified in stopping defendant. Counsel were not ineffective for failing to bring a motion for an evidentiary hearing.

## 2. SPEEDY TRIAL

"Whether defendant was denied the right to a speedy trial is a constitutional law question that is reviewed de novo." *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013).

Defendant cites MCR 6.004(D)(1), which applies to "untried charges against state prisoner" and provides: "Except for crimes exempted by MCL 780.131(2), the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is

---

[5] *Terry v Ohio*, 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968).

pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint." The provision does not apply to defendant because he was not taken into custody until April 24, 2012 and his trial was conducted in October 2012, well within the 180 period.

However, "[a]side from the 180–day rule, a defendant's right to a speedy trial is guaranteed by the United States and Michigan Constitutions," which guarantee "a speedy trial without reference to a fixed number of days." *Rivera*, 301 Mich App at 193. MCL 768.1 provides: "The people of this state and persons charged with crime are entitled to and shall have a speedy trial and determination of all prosecutions and it is hereby made the duty of all public officers having duties to perform in any criminal case, to bring such case to a final determination without delay except as may be necessary to secure to the accused a fair and impartial trial." The delay period commences at the time of the defendant's arrest. *People v Williams*, 475 Mich 245, 264; 716 NW2d 208 (2006). In determining whether a defendant's right to a speedy trial is violated, a court must look to "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Rivera*, 301 Mich App at 193. Here, because the delay was less than 18 months, defendant was obligated to show that that he was prejudiced by the delay. *Id.* "There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264, quoting *People v Collins*, 388 Mich 680; 202 NW2d 769 (1972). Of the two concerns, prejudice to the defendant is the more serious because failure of a defendant to adequately prepare his case "skews the fairness of the entire system." *Williams,* 475 Mich at 264, quoting *People v Chism*, 390 Mich 104; 211 NW2d 193 (1973).

The length of delay in this case was less than a year and the reason for the delay was certainly shared. Delays that resulted from filing an amended information, failing to writ defendant out for proceedings, and scheduling problems with the court may be attributable to the prosecutor but are given minimal weight. *Williams*, 475 Mich at 263. But the bulk of the delay must be attributable to defendant, who had more than one attorney and at one point indicated that he was acting as his own attorney. Defendant also filed a number of pre-trial motions that needed to be addressed. Moreover, defendant has failed to show prejudice to his person or his defense. There is simply no evidence that defendant's five-month incarceration on matters other than the charged offenses somehow interfered with his ability to prepare his case.

Affirmed.

/s/ Jane M. Beckering
/s/ Donald S. Owens
/s/ Kirsten Frank Kelly